134 F.3d 1090
 45 U.S.P.Q.2d 1368
 ENZO APA & SON, INC., Aero Precision Products, Inc.,
Cappuccino Foam, Inc., Domenico APA, Giuseppe APA,
Vincenzo APA and Victoria Arduino
L'Originale,
Counterdefendants-Appellants,
v.
GEAPAG A.G. and Nuova Faema, S.P.A.,
Counterclaimants-Cross/Appellants.
 Nos. 97-1120, 97-1150.
 United States Court of Appeals,
Federal Circuit.
 Jan. 9, 1998.
 
 Barry L. Haley, Malin, Haley, DiMaggio & Crosby, P.A., Fort Lauderdale, FL, argued for counterdefendants-appellants. With him on the brief was Christina Pinheiro-Palmer.
 Bonnie S. Satterfield, Ruden, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, FL, argued for counterclaimants-cross/appellants. On the brief were John H. Pelzer, and Anibal Jose Cortina.
 Before RICH, and LOURIE, Circuit Judges, and ARCHER, Senior Circuit Judge.*
 RICH, Circuit Judge.
 
 
 1
 Enzo APA & Son, Inc., Aero Precision Products, Inc., Cappuccino Foam, Inc., Domenico APA, Giuseppe APA, Vincenzo APA, and Victoria Arduino L'Originale, (Enzo) appeal the judgment of the United States District Court for the Southern District of Florida in favor of Geapag A.G. and Nuova Faema, S.p.A. (Geapag). Specifically, Enzo appeals the court's grant of the motions for partial summary judgment holding (1) that Patent No. 4,715,274 was not invalid and was infringed by Enzo, (2) that a permanent injunction should issue against Enzo, and (3) that Geapag had standing to sue. Geapag cross appeals the court's judgment that infringement was not willful. We reverse the court's grant of the motion for partial summary judgment on the issue of standing and vacate the court's entry of judgments on the merits.
 
 BACKGROUND
 
 2
 This controversy began on January 27, 1993, when Enzo brought an action for declaratory judgment against Geapag, seeking a judgment of patent invalidity and noninfringement of Patent No. 4,715,274 (the '274 patent). Shortly thereafter, Geapag brought a separate action against Enzo for patent infringement and sought injunctive relief and damages. The cases were consolidated in Florida district court at the parties' request.
 
 
 3
 In October 1993, Enzo filed a request for reexamination of the '274 patent before the United States Patent and Trademark Office (the PTO). Litigation was stayed until the PTO issued a reexamination certificate confirming the patentability of the '274 patent claims. At that time, Geapag moved for a partial summary judgment on the issues of standing, invalidity and infringement. In turn, Enzo filed a cross-motion for partial summary judgment of patent invalidity.
 
 
 4
 In April 1995, the court granted the motion for partial summary judgment on the issue of standing, holding that Geapag had standing, and ordered a hearing on the issue of invalidity and infringement. After the hearing, the court held the '274 patent not invalid and infringed. On Geapag's motion in April 1996, the court issued a permanent injunction against Enzo and granted Nuova Faema S.p.A.'s motion for judgment of dismissal with prejudice and entry of a protective order. The court denied Nuova Faema S.p.A.'s motion for sanctions against Enzo. Finally, the court found, sua sponte, that infringement was not willful. This appeal followed.
 
 DISCUSSION
 
 5
 On appeal, Enzo objects, inter alia, that Geapag lacked standing to bring an action under U.S. Patent No. 4,715,274 (the '274 patent), because Geapag was a non-exclusive licensee at the time the claims and counterclaims were filed on May 14, 1993 and February 26, 1993. We review standing de novo. See Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1551, 35 USPQ2d 1065, 1074 (Fed.Cir.) (in banc), cert. denied, 516 U.S. 867, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995).
 
 
 6
 In order to adjudicate Enzo's appeal on the standing issue, we must trace the chain of title to the patent. Application for the '274 patent was filed on January 31, 1986, claiming priority from two Italian patent applications--19311 A/85 and 22947/85[U] (the Italian applications). The '274 patent issued on December 29, 1987, with Luciano Paoletti named as the inventor and Spidem, S.r.L. (Spidem) named as the assignee of record.
 
 
 7
 On December 4, 1987, Spidem allegedly granted an exclusive license to Joplin and Knox Ltd. (J & K) under the Italian applications (the Spidem-J & K License). As there is no copy of the Spidem-J & K License in the record, we do not know whether this license extended to the '274 patent. However, this is of no moment. Even if the Spidem-J & K License extended to the '274 patent, the subsequent license granted by J & K to Geapag did not. J & K granted an exclusive sublicense to Geapag to make and sell product under the Italian applications (the J & K-Geapag License). By its terms, the J & K-Geapag License does not extend, either implicitly or explicitly, to related or corresponding foreign patent applications or any patents maturing therefrom. In fact, it is specifically limited to the Italian applications and two other Italian patent applications listed on the face of the agreement.
 
 
 8
 It follows that on February 3, 1988, when Geapag granted Nuova Faema S.p.A., M. Schaerer AG, and Cafag Kaffeemaschinen AG, nonexclusive sublicenses to use product, and a limited right to sell product under a number of related patents including the '274 patent, it did not actually have the power to convey those rights.
 
 
 9
 It was not until well after the various actions and counteractions of both Enzo and Geapag were filed in district court, that Geapag and Spidem sought to clear the chain of title to the '274 patent retroactively. On October 15, 1993, Geapag and Spidem entered into an agreement through which the Spidem-J & K and the J & K-Geapag Licenses were canceled and an exclusive licensing arrangement was entered into between Spidem and Geapag (the Spidem-Geapag License).
 
 
 10
 By its terms, the Spidem-Geapag License is retroactive, effective as of December 4, 1992, thus predating the first filed action. It grants Geapag the exclusive right to make, distribute, use and sell the products and methods under the originally identified Italian applications and "related and corresponding Italian and foreign patent applications and all patents maturing therefrom and extensions thereof", inter alia, the '274 patent. Geapag alleges that the Spidem-Geapag License was a memorialization of the pre-suit oral agreement of the parties. The Spidem-Geapag License is the only asserted written transfer of rights to Geapag of record with respect to the '274 patent.
 
 
 11
 The Patent Act (the Act) provides that a "patentee" shall have remedy by civil action for patent infringement. 35 U.S.C. § 281 (1994). The term "patentee" is defined in the Act under section 100(d) as including not only the patentee to whom the patent issued, but the successors in title to the patentee. This has been interpreted to require that a suit for infringement must ordinarily be brought by a party holding legal title to the patent. See, e.g., Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574, 1578-79, 19 USPQ2d 1513, 1517-18 (Fed.Cir.1991).
 
 
 12
 Accordingly, an assignee is the patentee and has standing to bring suit for infringement in its own name. See 35 U.S.C. § 100(d) (1994). The assignment of legal title in a patent can be conveyed in the form of the entire patent, an undivided part or share of the entire patent, or all rights under the patent in a specified geographical region of the United States (a so called "grant"). See Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891) (addressing the predecessor patent statute). Any less than a complete transfer of these rights is merely a license, in which case the title remains with the owner of the patent and the suit must be brought in its name. Id.
 
 
 13
 We have accorded standing, in certain limited circumstances, where all substantial rights under the patent have been transferred in the form of an exclusive license, rendering the licensee the virtual assignee. Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.p.A., 944 F.2d 870, 20 USPQ2d 1045 (Fed.Cir.1991). Geapag argues that it was the virtual assignee under the terms of the nunc pro tunc Spidem-Geapag License agreement, which allegedly memorialized the oral license agreement. It alleges that the terms of the exclusive license were to make, use, and sell the licensed products and the exclusive right to sue for infringement of the patent rights.
 
 
 14
 It is clear from the record that there was no writing transferring all substantial rights under the '274 patent to Geapag at the time it brought suit. Thus, we must then determine whether an oral exclusive license or a nunc pro tunc license executed after suit is brought, or some combination of the two, can confer standing. We conclude that under any of these circumstances the holder of title must be joined in order to confer standing.
 
 
 15
 First, Geapag argues that it should be of no consequence that the rights were not memorialized in writing prior to entering into the Spidem-Geapag License. It points out that a license may be written, verbal, or implied. While we acknowledge that a license may be written, verbal, or implied, if the license is to be considered a virtual assignment to assert standing, it must be in writing. The limited exception we have provided conferring standing on licensees is restricted to virtual assignees. As such, the licensing arrangement conferring such must, logically, resemble an assignment in both form and substance. Under the 35 U.S.C. § 261 (1994), "[a]pplications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing." If we were to expand the exception to include verbal licenses, the exception would swallow the rule. Parties would be free to engage in revisionist history, circumventing the certainty provided by the writing requirement of section 261 by claiming to be patentee by virtue of a verbal licensing arrangement.
 
 
 16
 Second, Geapag argues that the nunc pro tunc Spidem-Geapag License, which was entered into October 15, 1993, and made effective December 4, 1992, renders it a virtual assignee for the purposes of standing. However, as has been aptly stated, nunc pro tunc assignments are not sufficient to confer retroactive standing on the basis that:
 
 
 17
 As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignment in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day.
 
 
 18
 Procter & Gamble Co. v. Paragon Trade Brands, Inc., 917 F.Supp. 305, 310, 38 USPQ2d 1678, 1682 (D.Del.1995). Geapag has not provided us with any reason to stray from this sound reasoning to confer standing based on a retroactive licensing arrangement, regardless of its terms.
 
 
 19
 Accordingly, we reverse the court's grant of the motion for partial summary judgment on the issue of standing. Having found Geapag to be without standing for failing to join the patentee, it follows that the court lacks jurisdiction over Enzo's declaratory judgment claims under Fed.R.Civ.P. 19 for nonjoinder. Thus, we vacate the court's entry of judgments on the merits.
 
 
 20
 REVERSED AND VACATED.
 
 
 
 *
 Senior Circuit Judge Archer vacated the position of Chief Judge on December 24, 1997