**RHONE–POULENC AGRO, S.A. (Now known as Aventis CropScience SA), Plaintiff–Appellant,**

v.

**DeKALB GENETICS CORPORATION, Defendant,**

v.

**Monsanto Company (now known as Pharmacia Corporation), Defendant–Appellee.**

**Nos. 00–1266, 00–1352.**

United States Court of Appeals, Federal Circuit.

Decided March 26, 2002.

Corrected March 27, 2002.

Rehearing En Banc Denied May 8, 2002.*

---

* Judge MICHEL did not participate in the vote.

George Pazuniak, Connolly Bove Lodge & Hutz LLP, of Wilmington, DE, filed a petition for rehearing en banc on behalf of the plaintiff-appellant. With him on the rehearing brief was Francis DiGiovanni.

E. Edward Bruce, Covington & Burling, of Washington, DC, filed a response on

behalf of the defendant-appellee. With him on the response were Elizabeth Stotland Weiswasser, and Paul W. Schmidt.

Before CLEVENGER, SCHALL, and DYK, Circuit Judges.

## ON PETITION FOR REHEARING EN BANC.

DYK, Circuit Judge.

Rhône–Poulenc Agro, S.A. ("RPA") appeals from the decision of the United States District Court for the Middle District of North Carolina granting summary judgment of non-infringement on the ground that Monsanto Co. ("Monsanto") has a valid license to U.S. Patent No. 5,510,471, reissued on December 14, 1999 as RE 36,449 ("the '471 patent"). *Rhône–Poulenc Agro, S.A. v. Monsanto Co.*, No. 1:97CV1138, (M.D.N.C. Feb. 8, 2000), 2000 U.S. Dist. LEXIS 21330. The issue here is whether a sublicensee (Monsanto) that acquired the sublicense from a licensee (DeKalb Genetics Corp. ("DeKalb")), that acquired the original license by fraud, may retain the sublicense by establishing that the sublicensee was a bona fide purchaser for value. On November 19, 2001, this court affirmed the district court's grant of summary judgment in favor of Monsanto Company ("Monsanto") on the basis of this court's earlier panel decision in *Heidelberg Harris, Inc. v. Loebach*, 145 F.3d 1454, 46 USQP.2d 1948 (Fed.Cir.1998).

RPA filed a combined petition for rehearing or rehearing *en banc* which the court *en banc* granted today. As a result of the *en banc* order, we are no longer bound by this court's earlier decision in *Heidelberg Harris*. We hold that the bona fide purchaser defense is governed by federal law and is not available to non-exclusive licensees in the circumstances of this case. Accordingly, we vacate the decision of the district court and remand for fur-ther proceedings consistent with this opinion.

## BACKGROUND

The detailed history of this case is set forth in our opinion in the companion case of *Rhône–Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 272 F.3d 1335, 60 USPQ2d 1769 (Fed.Cir.2001) (*"Rhône–Poulenc I "*). Briefly the facts are these. From 1991 through 1994, RPA and DeKalb collaborated on the development of biotechnology related to specific genetic materials. During this time, a scientist at RPA, Dr. De-Rose, developed an optimized transit peptide ("OTP") with a particular maize gene, which proved useful in growing herbicide resistant corn plants. The OTP is covered by the claims of the '471 patent and is the subject of RPA's patent infringement claim against Monsanto.

In 1994, RPA, DeKalb, and non-party Calgene, Inc. ("Calgene") entered into an agreement (the "1994 Agreement") that provided:

> RPA and CALGENE hereby grant to DEKALB the world-wide, paid-up right to use the RPA/CALGENE Technology and RPA/CALGENE Genetic Material in the field of use of corn. DEKALB shall have the right to grant sublicenses to the aforementioned right to use without further payment being made to RPA or CALGENE.

The RPA/CALGENE Technology and RPA/CALGENE Genetic Material included the invention claimed in the '471 patent. In 1996, DeKalb sublicensed its rights to the RPA/Calgene Technology and Genetic Material to Monsanto. At the same time Monsanto granted to DeKalb licenses to use certain intellectual property related to genetically-engineered corn. Monsanto also acquired a forty percent equity inter-

est in DeKalb, and ten percent of DeKalb Class A (voting) stock.

On October 30, 1997, RPA filed suit against DeKalb and Monsanto, seeking, *inter alia*, to rescind the 1994 Agreement on the ground that DeKalb had procured the license (the "right to use") by fraud. RPA also alleged that DeKalb and Monsanto were infringing the '471 patent and had misappropriated RPA's trade secrets. Monsanto defended, *inter alia*, on the ground that it had a valid license to practice the invention of the patent and use the trade secrets, based on the rights owned under the 1994 Agreement that were transferred by DeKalb to Monsanto in 1996. At trial, a jury found, *inter alia*, that DeKalb had fraudulently induced RPA to enter into the 1994 Agreement. The district court ordered rescission of the 1994 Agreement. Nonetheless, Monsanto moved the district court for summary judgment that it had a valid license to the '471 patent and the right to use RPA's trade secrets because under the 1996 Agreement Monsanto was a bona fide purchaser for value of the sublicense to the patent and the trade secrets. The district court orally granted this motion and dismissed the infringement and misappropriation claims against Monsanto. RPA moved for reconsideration of the district court's dismissal, but the district court, relying on *Heidelberg Harris*, 145 F.3d 1454, 46 USPQ2d 1948, reaffirmed its grant of summary judgment in its February 8, 2000, opinion. *Rhône–Poulenc*, No. 1:97CV1138, slip op. at 56.

The district court found that, as a sublicensee of the '471 patent and the trade secrets, Monsanto was "entitled to be considered a bona fide purchaser, because it paid value for the right to use the technology without knowledge of any wrongdoing by DeKalb." *Id.* Because "Monsanto [was] a bona fide purchaser of the ... technolo-

gy, [it] therefore [could not] be liable as a patent infringer or a trade secret misappropriater." *Id.* at 58–59. The district court explicitly did not reach the issues of whether Monsanto's bona fide purchaser defense would apply to any future licenses of RPA's technology or whether, in light of the 1994 RPA–DeKalb–Monsanto Agreement granting DeKalb the right to sublicense, the bona fide purchaser defense would benefit sublicensees of Monsanto.

RPA filed this timely appeal, which concerns only the validity of Monsanto's license to practice the '471 patent. On this appeal, RPA does not challenge the district court's dismissal of RPA's claim for trade secret misappropriation.

## DISCUSSION

### I

■ We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307, 46 USPQ2d 1752, 1755 (Fed.Cir.1998). We review a district court's grant of a motion for summary judgment without deference. *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315, 47 USPQ2d 1272, 1275 (Fed.Cir.1998).

### II

In *Rhône–Poulenc I*, we affirmed the judgment of the district court, rescinding the 1994 licensing agreement based on a jury verdict finding that DeKalb acquired its patent license by fraud. RPA asserts that it necessarily follows that the Monsanto sublicense to the '471 patent is void, and that Monsanto can be sued for patent in-

fringement. We agree, since the court *en banc* has held that we are not bound by the decision in *Heidelberg Harris*, 145 F.3d 1454, 46 USPQ2d 1948.

### III

■ Under some circumstances the bona fide purchaser defense in patent cases is governed by a federal statute, 35 U.S.C. § 261. The statute provides that "[a]n assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage." 35 U.S.C. § 261.

But this case does not involve a situation covered by § 261. That statute is by its terms limited to situations in which the patent owner makes inconsistent assignments, grants, or conveyances to two entities, and the question is whether the later assignee should prevail. Section 261 provides that a later bona fide purchaser for value without notice (a later assignee) prevails if the earlier assignment was not timely recorded in the patent office. This case, however, involves a different situation—the circumstance in which the interest in the patent held by the grantor is voidable and the question is whether a grantee may retain its interest even if the grantor's interest is voided. Section 261

does not directly govern the resolution of this question.

■ Since section 261 does not apply directly, we must turn to other provisions of the Patent Act. Section 271 of the Act provides: "whoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent." 35 U.S.C. § 271(a). We are charged with the task of determining the meaning of the term "without authority." Under this provision, as under other provisions of the Patent Act, the courts have developed a federal rule, where appropriate, and have deferred to state law, where that is appropriate.[1] This issue of whether to apply state or federal law has particular importance in this case because North Carolina state law, the law of the forum state, does not recognize a bona fide purchaser defense unless there has been a title transfer.[2]

■ In general, the Supreme Court and this court have turned to state law to determine whether there is contractual "authority" to practice the invention of a patent. Thus, the interpretation of contracts for rights under patents is generally governed by state law. *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262, 99 S.Ct. 1096, 59 L.Ed.2d 296, 201 USPQ 1, 4 (1979); *Lear, Inc. v. Adkins*, 395 U.S. 653, 661–62, 89 S.Ct. 1902, 23 L.Ed.2d 610, 162 USPQ 1, 5 (1969); *Sun Studs, Inc. v. Applied Theory Assocs., Inc.*, 772 F.2d 1557, 1561, 227 USPQ 81, 83–84 (Fed.Cir.

---

1. The general rule, stated in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is "[t]here is no federal general common law." However, in the area of patent law, as in the area of antitrust, "the [*Erie*] doctrine . . . is inapplicable to those areas of judicial decision within which the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those stat-

utes, rather than by local law." *Sola Elec. Co. v. Jefferson Elec. Co.*, 317 U.S. 173, 176, 63 S.Ct. 172, 87 L.Ed. 165 (1942).

2. Under the law of North Carolina (the state in which RPA filed suit) "in the absence of an estoppel, one is not entitled to protection as a bona fide purchaser unless he holds the legal title to the property in dispute." *Wilson v. Commercial Fin. Co.*, 239 N.C. 349, 79 S.E.2d 908, 914 (1954).

1985); *Studiengesellschaft Kohle, M.B.H. v. Hercules, Inc.*, 105 F.3d 629, 632, 41 USPQ2d 1518, 1521 (Fed.Cir.1997); *Gjerlov v. Schuyler Labs., Inc.*, 131 F.3d 1016, 1020, 44 USPQ2d 1881, 1885 (Fed.Cir. 1997). Just as the interpretation of patent license contracts is generally governed by state law, so too the consequences of fraud in the negotiation of such contracts is a matter generally governed by state law, as we have recognized in our companion case, *Rhône–Poulenc I*, 272 F.3d at 1344, 60 USPQ2d at 1773. It may be argued that the impact of fraud upon the validity of a license as against a bona purchaser defense should also be governed by state law. However, we confront here a unique situation in which a federal patent statute explicitly governs the bona fide purchaser rule in some situations but not in all situations. It would be anomalous for federal law to govern that defense in part and for state law to govern in part. There is quite plainly a need for a uniform body of federal law on the bona fide purchaser defense. *See Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank*, 527 U.S. 627, 645, 119 S.Ct. 2199, 144 L.Ed.2d 575, 51 USPQ2d 1081, 1088 (1999) ("The need for uniformity in the construction of patent law is undoubtedly important. . . .").

On the related question of the transferability of patent licenses, many courts have concluded that federal law must be applied. *Everex Sys, Inc. v. Cadtrak Corp. (In re CFLC, Inc.)*, 89 F.3d 673, 679, 39 USPQ2d 1518, 1523 (9th Cir.1996); *Unarco Indus., Inc. v. Kelley Co., Inc.*, 465 F.2d 1303, 1306, 175 USPQ 199, 201 (7th Cir. 1972) (because "question of assignability of a patent license is a specific policy of federal patent law dealing with federal patent law . . . . federal law applies to the question of the assignability of the patent license in question"), *cert. denied*, 410 U.S. 929, 93 S.Ct. 1365, 35 L.Ed.2d 590 (1973); *PPG Indus., Inc. v. Guardian Indus.*

*Corp.*, 597 F.2d 1090, 1093, 202 USPQ 95, 97 (6th Cir.1979) ("Questions with respect to the assignability of a patent license are controlled by federal law."), *cert. denied*, 444 U.S. 930, 100 S.Ct. 272, 62 L.Ed.2d 187 (1979). In so holding, courts generally have acknowledged the need for a uniform national rule that patent licenses are personal and non-transferable in the absence of an agreement authorizing assignment, contrary to the state common law rule that contractual rights are assignable unless forbidden by an agreement.

So too we have held that the question of whether an invention is the subject of a commercial offer for sale more than one year before a patent is filed is a question of federal rather than state law. *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1047, 59 USPQ2d 1121, 1126 (Fed.Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 1063, 151 L.Ed.2d 967 (U.S.2002). We noted that that rule was necessary to avoid the possibility of a patent's being valid in one state and invalid in another state. *Id.; see also Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1328, 60 USPQ2d 1687, 1692 (Fed.Cir.2001).

■ In short, because of the importance of having a uniform national rule, we hold that the bona fide purchaser defense to patent infringement is a matter of federal law. Because such a federal rule implicates an issue of patent law, the law of this circuit governs the rule. *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359, 50 USPQ2d 1672, 1675 (Fed.Cir.) (*en banc* in relevant part), *cert. denied*, 528 U.S. 1019, 120 S.Ct. 527, 145 L.Ed.2d 409 (1999). Of course, the creation of a federal rule concerning the bona fide purchaser defense is informed by the various state common law bona fide purchaser rules as they are generally understood. *See Scaltech*, 269 F.3d at 1328, 60

USPQ2d at 1692 (looking to the Uniform Commercial Code ("U.C.C.") to develop federal rule for determining when an invalidating offer to sell under 35 U.S.C. § 102(b) occurs); *Group One*, 254 F.3d at 1047, 59 USPQ2d at 1126 (looking to the U.C.C. to inform federal law).[3]

## IV

 Congress has specifically provided that patents are to be treated as personal property. 35 U.S.C. § 261. At common law, a bona fide purchaser (also known as a "good faith buyer") who acquired title to personal property was entitled to retain the property against the real owner who had lost title to the property, for example, by fraud. Generally, a bona fide purchaser is one who purchases legal title to property in good faith for valuable consideration, without notice of any other claim of interest in the property. *Malcom v. Wilson*, 534 So.2d 241, 242 (Ala.1988); *Realty Portfolio, Inc. v. Hamilton (In re Hamilton)*, 125 F.3d 292, 298 (5th Cir. 1997) (applying Texas law); *Weaver v. Barden*, 49 N.Y. 286, 291–92 (1872); *Island Pond Nat'l Bank v. Lacroix*, 104 Vt. 282, 158 A. 684, 693 (1932); Restatement (Restitution) § 172 and cmt. a (1937) (beneficiary of bona fide purchaser rule is one who "acquires title to property"); 77 Am. Jur.2d § 425. The bona fide purchaser rule exists to protect innocent purchasers of property from competing equitable interests in the property because "[s]trong as a plaintiff's equity may be, it can in no case be stronger than that of a purchaser, who has put himself in peril by purchasing a title, and paying a valuable consideration, without notice of any defect in it, or adverse claim to it...." Boone v. Chiles, 35 U.S. 177, 210, 10 Pet. 177, 9 L.Ed. 388 (1836).

At common law, however, it was quite clear that one who did not acquire title to the property could not assert the protection of the bona fide purchaser rule. Many courts have held that a party to an executory contract to purchase title, the owner of a lease, or a purchaser from a vendor who did not have title cannot benefit from the bona fide purchaser rule. *See, e.g., Villa v. Rodriguez*, 12 Wall. 323, 79 U.S. 323, 338, 20 L.Ed. 406 (1870) (When asserted by lessees holding an option to purchase land, "[t]he [bona fide purchaser] doctrine invoked has no application [because] the rights of the vendee lie in an executory contract. It applies only where the legal title has been conveyed and the purchase-money fully paid."); *Smith v. Orton*, 131 U.S. app. lxxv, lxxviii (1866) ("To bring the defence within [the bona fide purchaser rule], it must be averred ... that the conveyance was by deed, and that the vendor was seised of the legal title."); *Island Pond Nat'l Bank*, 158 A. at 693 ("It is generally held that the doctrine which protects a bona fide purchaser for a valuable consideration and without notice of existing equities is applicable solely to the purchaser of a legal title or interest...."); *Kaiser Energy, Inc. v. Commonwealth, Dep't of Envtl. Resources*, 113 Pa.Cmwlth. 6, 535 A.2d 1255, 1259 (1988) ("It is axiomatic that a person cannot effectively convey property in which he has no ownership rights. The bona fide purchaser concept applies only to purchasers *of legal title*.") (emphasis in original); *Myers v. Van Bus-*

---

**3.** Similarly, courts generally assume that federal statutes which regulate in the area previously governed by the common law are to be interpreted to be consistent with the common law unless Congress clearly articulates a contrary rule. *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 2286, 150 L.Ed.2d 347 (2001).

*kirk,* 96 Fla. 704, 119 So. 123, 126 (1928) ("In order to claim the full protection of the rule as to bona fide purchasers, the purchaser must hold a legal title, or be entitled to call for it, for if his title be merely equitable, then it must yield to a superior equity in an adverse party."); *Arnett v. Stephens,* 199 Ky. 730, 251 S.W. 947, 950 (1923) ("An assignor of a lease, unless by special covenant, is not a warrantor of title, and the assignee does not occupy the position of a bona fide purchaser."); *Bozeman Mortuary Ass'n v. Fairchild,* 253 Ky. 74, 68 S.W.2d 756, 758 (1934); *Merchants' & Farmers' State Bank v. Olson,* 189 Minn. 528, 250 N.W. 366, 368 (1933) ("If no title passes to the grantee named in the deed, then, of course, he can pass nothing on to an innocent subvendee."); *Fawcett, Isham & Co. v. Osborn, Adams & Co.,* 32 Ill. 411, 425 (1863) ("The general rule of law, sanctioned by common sense, is, that no man can, by his sale, transfer to another the right of ownership in a thing wherein he himself has not the right of property, except, and this for the sake of sustaining the currency, in the instances of cash, bank bills, checks and notes payable to bearer or transferable by delivery in the ordinary course of business, to a person taking it, *bona fide,* and paying value for it.... No one can sell a right when he himself has none to sell.") (emphasis in original); *James Talcott, Inc. v. Assocs. Discount Corp.,* 302 F.2d 443, 448 (8th Cir.1962) (holding that the bona fide purchaser rule does not apply when the second "purchaser" does not obtain title, because "a purchaser obtains from his vendor only such title as the latter has to give"); *Fosco Leasing Co. v. Cohen,* 8 B.R. 558, 560 (Bankr.W.D.Okla. 1981) ("A seller cannot transfer better title to a chattel than it possesses."); *Cook v. Eller,* 298 S.C. 395, 380 S.E.2d 853, 854 (1989) ("An individual cannot claim bona fide purchaser status if his grantor never had title to the property."), *cert. dismissed* 302 S.C. 160, 394 S.E.2d 327 (1990); 77 Am.Jur.2d § 427 (1997) ("The protection accorded a person as a bona fide purchaser of real estate does not apply to a person who acquires no semblance of title. If the vendor has no title, the purchaser acquires none."); 77 Am.Jur.2d § 430 (1997) ("[T]he protection afforded a bona fide purchaser of real estate generally extends only to persons purchasing and acquiring legal title...."); Ray Brown, *The Law of Personal Property* § 67 (2d ed. 1955) ("One who has no title to goods cannot pass title to even a bona fide purchaser.").

It is clear under the law of North Carolina (the state in which RPA filed suit) that "[i]n the absence of an estoppel, one is not entitled to protection as a bona fide purchaser unless he holds the legal title to the property in dispute." *Wilson v. Commercial Fin. Co.,* 239 N.C. 349, 79 S.E.2d 908, 914 (1954).

Monsanto urges that the cases requiring that one obtain title to benefit from the bona fide purchaser defense are "antiquated," and the Uniform Commercial Code's ("U.C.C.") modern approach has rejected the requirement of title. In fact, the title rule is recognized in modern property law, and has been confirmed by the U.C.C., Articles 2 and 2B. Under U.C.C. Article 2–403, even "[a] person with voidable title has power to transfer a good title to a good faith purchaser for value." Article 2B of the U.C.C. was recently adopted as the Uniform Computer Information Transactions Act ("UCITA"), U.C.I.T.A. (2000) and is relevant to the application of the bona fide purchaser rule to intellectual

property.[4] To be sure, the scope of UCITA is limited to "computer information transactions," UCITA § 103(a), and therefore is not applicable to all patent licensing cases.[5] Nevertheless, UCITA (pertaining to the licensing of intangible property) provides guidance on the U.C.C.'s view of the common law.

Official comment 3 to UCITA § 506(b) makes clear that the drafters of the U.C.C. concluded that at common law the bona fide purchaser rule does not apply to the licensing of intellectual property:

> Subsection (b) provides that as a general rule, a licensee's transferee acquires only those contractual or other rights that the licensee was authorized to transfer. *There is no principle of bona fide purchaser of a mere contract right.*
>
> Similarly, *neither copyright nor patent recognize concepts of protecting a buyer in the ordinary course (or other good faith purchaser)* by giving that person greater rights than were authorized to be transferred even if the transfer includes delivery of a copy associated with the contract. Transfers that exceed or are otherwise unlicensed by a patent or copyright owner create no rights of use in the transferee. Indeed, such transfers may in themselves be an infringing act.

(emphases added).

Monsanto has been unable to cite a single common law case in which the bona fide purchaser rule was applied to the holder of a mere contract right, such as a license. Monsanto cites *Wilson v. M & W Gear, Inc.*, 110 Ill.App.3d 538, 66 Ill.Dec. 244, 442 N.E.2d 670, 672–73 (1982). The issue in *Wilson* was whether one who contracts to buy goods and pre-pays the purchase price without taking possession of the goods is a "buyer in the ordinary course of business" entitled to protection against a third party holding a security interest in the good without regard to the existence, identification, or passage of title of the goods. *Id.* at 672. The court held that

> when a person contracts to buy goods and those goods are in the dealer's inventory, awaiting delivery or being prepared for delivery, that purchaser is a buyer in the ordinary course of business within the meaning of [U.C.C.] section 9–307. Title to the goods does not have to pass to the purchaser nor do the goods need to be identified by number before section 9–307 will protect retail purchasers.

*Id.* at 675. In dictum, the court stated: "[a]ntiquated concepts of 'title' do not control the resolution of this appeal.... The [U.C.C.] has diminished drastically the importance of title. In particular, the question of whether title has passed is immaterial to the protections afforded to a buyer in the ordinary course of business." *Id.* at 672–73. *Wilson* held that one who had contracted to purchase goods and had "fully performed his part of the contract," *id.* at 674, need not formally take title to identified goods to benefit from U.C.C. § 9–307 as a buyer in the ordinary course

---

4. UCITA has been enacted by Virginia and Maryland, and legislation that would adopt UCITA has been introduced in seven other states and the District of Columbia. *See* Md. Code Ann., Comm. Law. § 22–101, *et seq.* (2001); Va.Code Ann. § 59.1–501.1, *et seq.;* What's Happening to UCITA in the States, *available at* http://www.ucitaonline.com/whathap.html (last modifed October 8, 2001).

5. Section 506 of UCITA governs the transfer of computer information by a licensee, and subsection (b) of section 506 provides that "[e]xcept as otherwise provided under trade secret law, a transferee acquires no more than the contractual interest or other rights that the transferor was authorized to transfer."

of business. *Wilson* was concerned with a situation in which a retail buyer, acting in the ordinary course of business, had satisfied all but the formalities of acquiring title. Whether or not *Wilson* was correctly decided, it does not purport to protect a mere license holder.

Monsanto also urges, in its opposition to the petition for rehearing, that under the U.C.C. "bona fide purchaser protection ... applies broadly to anyone who takes 'by sale, discount, negotiation, mortgage, pledge, lien, security interest, issue or re-issue, gift or any other voluntary transaction creating an interest in property.' " (quoting U.C.C. 1–201 (defining "purchaser")). While Monsanto accurately quotes the U.C.C.'s definition of a "purchaser," it mistakenly concludes that the bona fide purchaser defense is available to anyone who satisfies this definition.[6]

Monsanto also relies on statements from various treatises on patent licensing for the proposition that a sublicense continues, even when the principal license is terminated. But the statements address the situation where the original licensee is terminated as a matter of contract law, *e.g.*, for breach of contract.[7] These treatises do not address the operation of the bona fide purchaser rule with respect to sublicenses and do not state or suggest that a sublicense continues even when the principal license is rescinded because it has been obtained by fraud. Monsanto also relies on the Restatement (Restitution) § 13 (1937) that "[a] person who has entered into a transaction with another ... is not entitled to restitution from a third person who has received title to *or legal interest* in the subject matter from the other ... and has given value ... without notice" (emphasis added) for the proposition that the bona fide purchaser rule applies to transfers of less than title, but this reliance is similarly misplaced. The comments and illustrations accompanying section 13 make clear that in general obtaining or perfecting title is an essential element of the bona fide purchaser defense. *See, e.g., id.* at cmt. a ("a person who innocently *has acquired the title* to something for which he has paid value is under no duty to restore it to one who would be entitled to reclaim it if the one receiving it had not been innocent *or had not obtained the title* or had not paid value therefore") (emphases added). The only illustration of section 13 (illustration 2) in which the third party obtains something less than title, involves a bona fide

---

6. Monsanto cites *Ledbetter v. Darwin Dobbs Co.*, 473 So.2d 197, 202 (1985), for the proposition that the bona fide purchaser defense can apply when something less than title transfer is involved. That case involved competing claims to a vehicle between the original owner and a bank which had perfected a security interest in the vehicle obtained from one who had purchased the vehicle but had only obtained voidable title. The court held that the perfection of a security interest by the bank was the equivalent of a purchase and that the bank was a purchaser in good faith. *Id. Ledbetter,* however, did not hold that the holder of a mere contract right is a equivalent to a purchaser.

7. *See, e.g.,* Ridsdale Ellis, *Patent Licenses* § 62 (3d ed. 1958) ("A Sub–License Is an Inde-

pendent Contract and, Therefor, It Is Not Terminated by the Termination of the Main License, Unless Specifically So Provided."); *Id.* at 63 ("Where a sub-licensee has lived up to the terms of the license it is inequitable that his license should be revoked because the main licensee has failed to do the same, especially where the sub-licensee has made extensive investments on the strengths of his license."); Brian G. Brunsvold & Dennis P. O'Reilley, *Drafting Patent License Agreements* 37 (BNA 4th ed. 1998) ("An authorized sublicense is in effect an agreement with the [original] licensor. Unless the agreement with the licensee provides otherwise, the sublicense will continue despite the early termination of the license agreement.").

mortgagee, whose legal interest, of course, empowers the mortgagee to perfect title in the transferred property. Moreover, Restatement (Restitution) § 172 and cmt. a indicate that the bona fide purchaser rule only applies to one who "acquires title to property."

Finally, Monsanto relies on U.C.C. §§ 2A–304, 2A–305.[8] Section 2A–304 states, in pertinent part, "[a] lessor with voidable title has power to transfer a good leasehold interest to a good faith subsequent lessee for value ...", while section 2A–305 states, in pertinent part,

> ... a buyer or sublessee from the lessee of goods under an existing lease contract obtains, to the extent of the interest transferred, the leasehold interest in the goods that the lessee had or had power to transfer.... A lessee with a voidable leasehold interest has power to transfer a good leasehold interest to a good faith buyer for value or a good faith sublessee for value.... When goods have been delivered under a transaction of lease the lessee has that power even though:
>
> ...
>
> (c) the delivery was procured through fraud punishable as larcenous under the criminal law.

These sections, however, cover only the leasing of goods, while intellectual property is excluded from the definition of goods,[9] and therefore are not relevant to this case.

Our decision in *FilmTec Corp. v. Allied–Signal, Inc.*, 939 F.2d 1568, 1573, 19

USPQ2d 1508, 1512 (Fed.Cir.1991), is entirely consistent with the common law bona fide purchaser rule, which applies only when a title transfer occurs. In that case, a party's standing to bring a patent infringement suit was at issue. Resolution of that issue turned on whether the party had obtained title to the patent. We held:

> It is well established that when a *legal title holder* of a patent *transfers his or her title* to a third party purchaser for value without notice of an outstanding equitable claim or title, the purchaser takes the entire ownership of the patent, free of any prior equitable encumbrance. *Hendrie v. Sayles*, 98 U.S. 546, 549, 25 L.Ed. 176 (1879). This is an application of the common law bona fide purchaser for value rule.

*Id.* (emphasis added).

### V

Even if the general common law extended the protection of the bona fide purchaser rule to holders of non-exclusive licenses, it would not be appropriate for us to extend such protection to non-exclusive licenses as a matter of federal common law. Section 261 of title 35 reflects a determination by Congress that only those who have obtained an "assignment, grant or conveyance" may benefit from the protection of the statute. This provision thus reflects a congressional judgment that the protections of the bona fide purchaser rule extend only to those who have received an "assignment, grant or conveyance." Un-

---

**8.** This section of the U.C.C. has been codified in North Carolina as N.C. Gen.Stat. § 25–2A–305 (1993).

**9.** Article 2A "applies to any transaction ... that creates a lease." U.C.C. § 2A–102. A "lease" is defined as "a transfer of the right to possession and use of goods...." U.C.C. § 2A–103(1)(j). In turn, "goods" is defined as "all things that are movable at the time of identification to the lease contract ..., but the term does not include ... general intangibles...." U.C.C. § 2A–103(h). Section 2A–103(3) states that the definition of "general intangibles" provided in U.C.C. § 9–106 shall apply to Article 2A. *See* Official Comment to U.C.C. § 9–106 (listing copyrights, trademarks, and patents as examples of general intangibles).

der such circumstances, the Supreme Court has made clear that we must consider the purposes of federal statutes in framing a rule of federal common law, even if the statutes are not directly applicable. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 511–512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). We have specifically held that non-exclusive licensees are not "assignees" under the statute. *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377, 55 USPQ2d 1742, 1747 (Fed.Cir.2000). *See also, Moldo v. Matsco, Inc. (In re Cybernetic Servs., Inc.)*, 252 F.3d 1039, 1051 (9th Cir.2001) (In section 261 "Congress … intended to refer to ownership interests only."), *cert. denied,* —— U.S. ——, 122 S.Ct. 1069, 151 L.Ed.2d 972 (U.S.2002).

Although our precedent has recognized that in some circumstances an exclusive patent license may be tantamount to an assignment of title to the patent, this is so only when "the licensee holds 'all substantial rights' under the patent." *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484, 45 USPQ2d 1633, 1635 (Fed.Cir.), *cert. denied,* 525 U.S. 826, 119 S.Ct. 73, 142 L.Ed.2d 58 (1998); *see also Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345, 58 USPQ2d 1681, 1689 (Fed.Cir.2001); *Prima Tek II,* 222 F.3d at 1377, 55 USPQ2d at 1747; *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 874–75, 20 USPQ2d 1045, 1048–49 (Fed.Cir.1991). Here the license is non-exclusive, and there is no contention that the license agreement transferred "all substantial rights." Thus, an assignment did not occur, and in the absence of an "assignment, grant or conveyance," Congress contemplated that there would be no bona fide purchaser defense.

## CONCLUSION

In sum, the bona fide purchaser defense does not apply to non-exclusive licensees. We accordingly vacate the decision of the district court and remand for further proceedings consistent with this opinion.

## *ORDER*

A petition for rehearing *en banc* having been filed by the Appellant, and a response thereto having been invited by the court and filed by the Appellee, and the matter having been first referred as a petition for rehearing to the merits panel that heard the appeal, and thereafter the petition for rehearing and response having been referred to the circuit judges who are in regular active service, and authorized to request a poll whether to rehear the appeal *en banc,*

A poll having been requested and taken,

Upon consideration thereof,

IT IS ORDERED THAT:

(1) The petition for rehearing *en banc* is granted for the limited purpose of deciding whether the court's decision in *Heidelberg Harris, Inc. v. Loebach,* 145 F.3d 1454, 46 USPQ2d 1948 (Fed.Cir.1998), is binding authority on the question of whether the bona fide purchaser doctrine applies to patent licenses.

(2) The *en banc* court has decided that, because of unique circumstances in that case, and the parties' not having contested the issue, *Heidelberg Harris* is not binding authority on the bona fide purchaser issue; and the panel is not constrained by the court's decision in *Heidelberg Harris.*

(3) Acting *en banc,* the court vacates the panel's judgment and original opinion entered November 19, 2001, and reported at 271 F.3d 1081, 60 USPQ2d 1785 (Fed.Cir. 2001).

(4) The *en banc* court reassigns the opinion to the panel for revision in light of its *en banc* holding.

Circuit Judge Michel did not participate in the vote.