**PARADISE CREATIONS, INC.,**
**Plaintiff–Appellant,**

v.

**UV SALES, INC., Defendant–Appellee.**

**No. 02–1283.**

United States Court of Appeals,
Federal Circuit.

DECIDED: Jan. 3, 2003.

Elliot H. Scherker, Greenberg Traurig, P.A., of Miami, FL, argued for plaintiff-appellant.

Kyle B. Fleming, Baker & Hostetler LLP, of Cleveland, OH, argued for defendant-appellee. With him on the brief was Thomas H. Shunk.

Before LOURIE, BRYSON, and DYK, Circuit Judges.

DYK, Circuit Judge.

This case presents the question of whether a suit for patent infringement must be dismissed for lack of Article III standing because the plaintiff corporation claimed its patent rights under a contract executed at a time when it was administratively dissolved. Paradise Creations, Inc. ("the appellant") appeals the final judgment of the United States District Court for the Southern District of Florida. The district court granted summary judgment in favor of the defendant, U V Sales, Inc. ("the appellee"), and dismissed the appellant's claim for patent infringement for

lack of standing. *Paradise Creations, Inc. v. U V Sales, Inc.,* No. 00–8898 (S.D.Fla. Nov. 13, 2001). We hold that the appellant lacked standing and that the district court properly dismissed the case. We accordingly affirm the judgment of the district court.

## BACKGROUND

The appellant was incorporated under the laws of Florida on March 13, 1985. On August 23, 1996, the appellant was administratively dissolved for failing to file its annual report, pursuant to Florida Corporation Statutes, chapter 607.1622(8), which provides: "[a]ny corporation failing to file an annual report ... shall be subject to dissolution or cancellation of its certificate of authority to do business as provided in this act." Fla. Stat. ch. 607.1622(8) (2001). The appellant remained administratively dissolved until it obtained reinstatement on June 29, 2001, after the filing of the complaint in this action.

During the period of its dissolution, the appellant entered into an agreement with Leon Hayduchok, whereby it alleges it obtained exclusive rights to the patent in suit, U.S. Patent No. 4,681,471 ("the '471 patent"). Under the agreement, Hayduchok, who was one of the named inventors listed in the patent, granted to the appellant "the exclusive, unlimited, irrevocable, world-wide right and license" to the '471 patent, effective October 14, 1997. (J.A. at 113). The appellant also relies on two letters, dated April 7, 1999, and May 13, 1999, in which Hayduchok and the other named inventor listed in the patent, Leopold Strauss, are alleged to have resolved litigation between each other regarding ownership of the '471 patent, and consented to continued enforcement and licensing of the patent by the appellant. Like the 1997 licensing agreement, these letters were written during the period of the appellant's administrative dissolution.

The appellant initiated this action by filing a complaint for patent infringement against the appellee in the United States District Court for the Southern District of Florida on September 29, 2000, during the period that the appellant was administratively dissolved.

On June 22, 2001, the appellee filed a motion for summary judgment, alleging that because the appellant had been administratively dissolved since August 1996, it did not have capacity to sue under Florida law or standing to invoke the district court's jurisdiction under Article III of the United States Constitution. The appellee argued that the appellant lacked capacity under Florida Corporation Statutes chapter 607.1622(8), which provides, "[a]ny corporation failing to file an annual report ... shall not be permitted to maintain or defend any action in any court of this state." The appellee further argued that because Florida law prohibits dissolved corporations from conducting business except that necessary to wind up and liquidate their business and affairs, the agreements the appellant entered into while administratively dissolved did not transfer enforceable patent rights to the appellant during the period of dissolution. Therefore, the appellee argued, the appellant did not have sufficient interest in the patent at suit to establish standing.

As noted above, on June 29, 2001, the appellant obtained reinstatement as a corporation from the Florida Department of State.

On July 2, 2001, the appellant filed a motion for leave to file an amended complaint, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. The appellant sought to join Hayduchok and Strauss as plaintiffs, as well as other parties. On August 9, 2001, the district court denied the appellant's motion without prejudice, holding that "[a]lthough leave to amend

shall be 'freely given,' Defendant correctly argues that subsequent attempts to 'fix' deficient standing by adding additional plaintiffs are futile." (J.A. at 214).[1]

On August 16, 2001, the appellant filed an opposition brief to the appellee's motion for summary judgment. The appellant argued that although it was administratively dissolved at the time it obtained exclusive rights to the patent and at the time it filed suit, under Florida Corporation Statutes chapter 607.1422(3), when an administratively dissolved corporation is reinstated, the reinstatement "relates back to and takes effect as of the effective date of the administrative dissolution and the corporation resumes carrying on its business as if the administrative dissolution had never occurred." (J.A. at 227, quoting Fla. Stat. ch. 607.1422(3) (2001)). According to the appellant, its reinstatement retroactively gave it the capacity to sue and standing to assert federal jurisdiction at the time it filed its complaint. (J.A. at 228).

On November 13, 2001, the district court granted the appellee's motion for summary judgment. The court held that standing in federal court is a matter of federal law, and "depends upon the state of things at the time of the action brought." *Paradise Creations,* No. 00–8898, slip op. at 5 (quoting *Keene Corp. v. United States,* 508 U.S. 200, 207, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993)). Therefore, the court reasoned, the Florida Corporation Statutes could not retroactively create jurisdiction where it was lacking at the time the action was filed. *Id.* at 7. The court noted that the "Plaintiff does not dispute" that the agreements it relied upon as its basis for rights in the patent "were not valid during the time that Plaintiff was dissolved." *Id.* at 6. Therefore, the court held, the appellant did not have enforceable rights to the '471 patent on the day it filed its complaint and

could not establish federal standing. *Id.* at 7.

The appellant timely filed this appeal. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I

■ We review the district court's grant of summary judgment without deference. *Schumer v. Lab. Computer Sys., Inc.,* 308 F.3d 1304, 1310, 64 USPQ2d 1832, 1837 (Fed.Cir.2002). This court reviews questions of law, including standing and capacity to sue under Federal Rule of Civil Procedure 17(b), without deference. *Lans v. Digital Equip. Corp.,* 252 F.3d 1320, 1328, 59 USPQ2d 1057, 1061 (Fed.Cir. 2001).

### II

■ It appears that under Florida law, the appellant had capacity to sue at the time of the complaint, at least insofar as the suit for patent infringement was "necessary to wind up and liquidate its business and affairs." Fla. Stat. ch. 607.1421(3) (2001). Under Federal Rule of Civil Procedure 17(b), "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." The Florida courts are now apparently unanimous that, although under chapter 607.1622 a corporation loses its capacity to sue if it fails to file an annual report, once it is administratively dissolved, somewhat paradoxically it regains capacity to sue under chapters 607.1421(3) and 607.1405(2)(e), as " 'necessary to wind up and liquidate its business and affairs.'" *Cygnet Homes, Inc. v. Kaleny Ltd. of Fla.,* 681 So.2d 826, 826 (Fla. 5th Dist.Ct.App.1996), (quoting Fla. Stat.

---

1. The appellant does not appeal this order.

ch. 607.1421(3)); *Nat'l Judgment Recovery Agency, Inc. v. Harris*, 826 So.2d 1034, 1035 (Fla. 4th Dist.Ct.App.2002) (overruling its precedent to the contrary and adopting the rule of *Cygnet*). Because the appellant was administratively dissolved on August 23, 1996, before having filed its complaint, it had capacity to sue under Florida law, as necessary to wind up its business and affairs.

## III

However, regardless of whether the appellant had capacity to sue, it must establish that it had standing under Article III of the Constitution at the time it filed suit. Whether a party has standing to sue in federal court is a question of federal law. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Article III standing, like other bases of jurisdiction, generally must be present at the inception of the lawsuit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n. 5, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (plurality opinion) ("[S]tanding is to be determined as of the commencement of suit."); *see also Keene Corp. v. United States*, 508 U.S. 200, 207, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) ("[T]he jurisdiction of the Court depends on the state of things at the time of the action brought."); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64, 67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (holding that standing is an aspect of the case or controversy requirement, which must be satisfied "at all stages of review").

To demonstrate standing under Article III, the plaintiff must satisfy three elements. First, the plaintiff must allege that it has suffered an " 'injury in fact'—an invasion of a legally protected interest." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. Second, "there must be a causal connection between the injury and the conduct complained of." *Id.* And third, "it must be

'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Id.* at 561, 112 S.Ct. 2130 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). The Patent Act provides that only "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (2000); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1018, 57 USPQ2d 1819, 1821 (Fed.Cir.2001). Under 35 U.S.C. § 100(d), "[t]he word 'patentee' includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." Exclusive licensees holding all substantial rights to the patent meet this standard. *Prima Tek II, L.L.C. v. A–Roo Co.*, 222 F.3d 1372, 1377, 55 USPQ2d 1742, 1745 (Fed.Cir.2000); *see also Rhone–Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323, 1334, 62 USPQ2d 1188, 1195 (Fed.Cir.2002).

The appellee argues that the appellant did not have enforceable patent rights during the period of its administrative dissolution, and therefore, did not hold such rights to the patent at the time it filed suit. Florida Corporation Statutes chapter 607.1421(3) provides: "[a] corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs." The appellee contends, without citation to any authority, that a contract entered into in violation of chapter 607.1421 cannot grant enforceable rights under Florida law, during the period of corporate dissolution. The appellant does not challenge this construction of the statute, thus admitting that it did not hold enforceable patent rights when the suit was filed. Instead, the appellant relies wholly on the theory that when it gained reinstatement, under Florida Corporation Statutes chap-

ter 607.1422, this reinstatement related back to the date of dissolution. Therefore, the sole issue on appeal is whether a state corporate revival statute can retroactively confer Article III standing where it did not exist at the time the complaint was filed.

## IV

■ Florida Corporation Statutes chapter 607.1422(3) provides: "[w]hen the reinstatement is effective, it relates back to and takes effect as of the effective date of the administrative dissolution and the corporation resumes carrying on its business as if the administrative dissolution had never occurred." The appellant contends that, pursuant to this statute, its licensing agreement was retroactively validated upon reinstatement, and that it constructively held enforceable patent rights on the day it filed its complaint. The appellee counters that whatever the effect of the corporate revival statute in Florida State courts, it cannot retroactively confer standing in federal court. We agree with the appellee.

■ As noted above, whether a party has standing to assert the jurisdiction of a federal court is a question of federal law, and "standing is to be determined as of the commencement of suit." *Lujan*, 504 U.S. at 570 n. 5, 112 S.Ct. 2130. Accordingly, this court has determined that in order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent *at the inception of the lawsuit*. *Lans*, 252 F.3d at 1328, 59 USPQ2d at 1061 (holding that the appellant did not have standing, because he had already assigned title to the patent at the inception of the lawsuit); *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1092, 45 USPQ2d 1368, 1370 (Fed.Cir. 1998) (holding that a licensee lacked standing where there was no written transfer of rights under the patent at the time the infringement claims were brought); *Jim*

*Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572, 42 USPQ2d 1119, 1123 (Fed.Cir.1997) (holding that an assignor lacked standing, because it had not succeeded in rescinding or canceling its assignment in state court at the time it filed its complaint in federal court); *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 778, 39 USPQ2d 1826, 1830 (Fed.Cir.1996) (holding that the plaintiff's patent and trademark infringement claims were required to be dismissed for lack of standing, because of its "inability to prove that it was the owner of the Intellectual Property at the time the suit was filed"), *as amended on rehearing on different grounds*, 104 F.3d 1296, 41 USPQ2d 1134 (Fed.Cir.1996); *cf. Matos v. Sec'y of Dep't of Health & Human Servs.*, 35 F.3d 1549, 1553 (Fed.Cir.1994) (holding that a jurisdictional defect created by the plaintiff's filing of a parallel action in state court cannot be cured by a *nunc pro tunc* order in the state court purporting to retroactively dismiss the state action).

In *Enzo*, the plaintiff claimed title to the patent under an exclusive license. 134 F.3d at 1092, 45 USPQ2d at 1370. As proof of title, the plaintiff produced a written agreement that was executed after the inception of the lawsuit, but which, by its terms, was retroactive, purportedly taking effect prior to the filing of the complaint. *Id.* This court determined that "[i]t is clear from the record that there was no writing transferring all substantial rights under the '274 patent to Geapag at the time it brought suit." *Id.* at 1093, 45 USPQ2d at 1370. We determined that " '[a]s a general matter, parties should possess rights before seeking to have them vindicated in court,' " 134 F.3d at 1093–94, 45 USPQ2d at 1371 (quoting *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F.Supp. 305, 310, 38 USPQ2d 1678, 1682 (D.Del. 1995)), and therefore held that the retroactive licensing agreement was "not suffi-

cient to confer retroactive standing." *Id.* We see no meaningful distinction between a contract provision that purports to vest title retroactively in the plaintiff and a state law that is alleged to vest enforceable title retroactively. We therefore hold that the rule of *Enzo* applies to this case.

This case is distinguished from *Mentor H/S, Inc.,* 240 F.3d at 1019, 57 USPQ2d at 1821. In that case, we held that an exclusive licensee with less than all substantial rights in the patent did not have the right to sue under the Patent Act at the inception of the lawsuit, but could cure the defect by filing a motion to join the patentee as a plaintiff. *Id.* In that case, the plaintiff had a cognizable injury at the inception of suit for the purpose of Article III standing, based on its exclusive license to the patent. *Id.* at 1018, 57 USPQ2d at 1821. Unlike in *Mentor,* however, the appellant in this case held no enforceable rights whatsoever in the patent at the time it filed suit, and therefore lacked a cognizable injury necessary to assert standing under Article III of the Constitution. *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130.

Such a defect in standing cannot be cured after the inception of the lawsuit.[2]

In summary, at the time the appellant filed its suit, it agrees that it did not have enforceable rights to the patent and did not have standing to assert federal jurisdiction. It cannot rely on the Florida corporate revival statute to retroactively claim enforceable patent rights on the day it filed its complaint, in order to assert standing. We express no opinion as to whether in a newly filed action, the corporate reinstatement of the plaintiff, which lifted Florida's bar on enforcement of any contract rights acquired during the period of its dissolution, would allow the plaintiff to sue for damages for infringement occurring during the dissolution period.[3]

Accordingly, we hold that this case was properly dismissed for want of standing, though the plaintiff may refile the action.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

---

**2.** The appellant also relies on *Stock Pot Restaurant, Inc. v. Stockpot, Inc.,* 737 F.2d 1576, 222 USPQ 665 (Fed.Cir.1984), and *Joseph A. Holpuch Co. v. United States,* 102 Ct.Cl. 795, 58 F.Supp. 560 (1945). In *Stock Pot,* the appellee was a dissolved Massachusetts corporation at the time it filed suit and therefore did not have capacity to sue under Massachusetts law. 737 F.2d at 1580, 222 USPQ at 668. During the course of proceedings, the appellee obtained reinstatement and, pursuant to a Massachusetts corporate revival suit, reobtained capacity to sue. *Id.* We gave effect to the state statute and held that the appellee could continue in the action. *Id.* However, we did not consider whether the appellee lacked Article III standing due to its lack of capacity to sue when the suit was brought. Nor was there an allegation in *Stock Pot* that the appellee obtained the rights to its intellectual property during the period of dissolution. *Holpuch* is also inapposite, because in that

case the dissolved corporation had been reinstated long before the suit was brought. 58 F.Supp. at 564.

**3.** It may be that Florida law only bars the dissolved corporation from enforcing the contract during the period of dissolution, but allows it to acquire title during dissolution. *See, e.g., Miller v. Celebration Mining Co.,* 29 P.3d 1231 (Utah 2001) (holding that under Utah law, a contract entered into by an administratively dissolved corporation *may be voided* by the other party to the contract, but is not automatically void); *White v. Dvorak,* 78 Wash.App. 105, 110, 896 P.2d 85 (1995) (although dissolution terminates a corporation's power to enter into a contract unrelated to winding up its affairs and liquidating its assets, "the contract is not absolutely void or completely unenforceable"). These appear to be questions of first impression under Florida law, and we need not address them here.

## COSTS

No costs.

LOURIE, Circuit Judge, dissenting.

I respectfully dissent from the majority's decision holding that Paradise lacked Article III standing to bring its lawsuit during the period of its administrative dissolution.

The requirements of Article III standing, as set forth in the majority opinion, *ante* at 1308 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (plurality opinion)), were fully satisfied under the facts of this case. Provided that Paradise had legal capacity under the law of Florida, *see infra*, it had been granted an exclusive license under the patent[1] and hence suffered an injury in fact from infringement; there is a causal connection between injury suffered by a patentee (or one who stands in the patentee's shoes) and allegedly infringing acts; and it is likely that such injury is redressable by winning a patent infringement suit. Thus, Article III standing was established.

The only issue here is whether the administrative dissolution deprived Paradise of its entitlement to bring the lawsuit. That is a matter of state, *viz.*, Florida law, as the existence and capacity of a corporation are governed by state law.

Paradise was temporarily impaired as a corporation under Florida law. In fact, if Paradise had not been reinstated under chapter 607.1422 of the Florida Statutes, then the only acts it would have been entitled to take would relate to winding up and liquidating its business. Fla. Stat. ch. 607.1421(3). However, chapter 607.1422 revived the corporation and permitted it to carry on its business "as if the administrative dissolution had never occurred." Fla.

Stat. ch. 607.1422(3). Thus, the acts of the corporation while it was administratively dissolved were restored. No Article III issue is involved.

As for the so-called "admission" during oral argument by Paradise, I understand that admission to be only that, during the period of dissolution, before reinstatement, Paradise lacked capacity to do business, which is no more than saying what chapter 607.1421 provides, until chapter 607.1422 has come into effect.

I also do not believe that *Enzo* governs this case. I see a meaningful difference between a party that had not entered into the contract before suit (the plaintiff in *Enzo*) and one who had (Paradise), but whose corporate capacity to transact business was temporarily defective. The other cases are similarly distinguishable.

Thus, I would reverse the decision of the district court holding that Paradise lacked Article III standing to bring this suit.

---

1. I do not purport to evaluate here whether the nature of the rights granted under the license entitled Paradise to sue; I assume it for purposes of this issue before us.