**DURATHERM, INC., Plaintiff,**

v.

**ONSITE TECHNOLOGY LLC, et al., Defendants.**

**CIV. A. No. H–00–2727.**

United States District Court, S.D. Texas, Houston Division.

Jan. 30, 2001.

Gregory L. Maag, Conley Rose and Tayon, Houston, TX, for Duratherm Inc., plaintiffs.

Kenneth H. Johnson, Kenneth H. Johnson & Associates, G. Byron Sims, Brown Sims P.C., Mitchell D. Lukin, Baker & Botts, Thomas R. Bray, Houston, TX, for On–Site Technology LLC, Waste Control Specialist LLC, Kevin Nowlin, defendants.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

This patent infringement case is before the Court on the Motion to Dismiss ("Motion") [Doc. # 26] filed by Defendant Onsite Technology LLC ("Onsite"). Plaintiff Duratherm, Inc. ("Duratherm") filed its Opposition [Doc. # 27], Onsite filed its Re-

ply [Doc. # 29], and Duratherm filed a Supplemental Opposition ("Sur-reply") [Doc. # 30]. Based on the Court's review of the full record in this case and the application of governing legal authorities, the Court grants the Motion.

## I. BACKGROUND

Duratherm filed this lawsuit against three defendants, Onsite, Waste Control Specialists, LLC ("WCS"), and Kevin Nowlin, a former salesman for Duratherm. Duratherm alleges that Onsite and WCS are liable for infringement of U.S. Patent No. 5,523,060 (the "'060 Patent" or the "patent-in-suit") by selling and offering to sell systems using infringing technology (the "ITD Systems") to Duratherm's customers. *See* Original Complaint [Doc. # 1], ¶¶ 15–20. Duratherm asserts that it has an exclusive license in the '060 patent from the patent holder, Jim S. Hogan. Duratherm also asserts a number of pendent state law causes of action. Defendants answered and Onsite and WCS asserted counterclaims for declaratory judgment against Duratherm.

Onsite filed its Motion, asserting that Duratherm does not have rights in the patent-in-suit which give it standing to sue for patent infringement. The issue has been fully briefed and is now ripe for decision.

## II. STANDARD FOR STANDING TO SUE FOR PATENT INFRINGEMENT

■ The statutory remedy for patent infringement is available only to patentees. *See* 35 U.S.C. § 281; *Prima Tek II, LLC v. A–Roo Co.*, 222 F.3d 1372, 1376–77 (Fed. Cir.2000). A patentee can receive rights either upon issuance of the patent or as a successor in interest to or virtual assignee of the original patentee. *See* 35 U.S.C. § 100(d); *id.* at 1377. "[A] bare licensee

has no standing at all." *See Textile Productions, Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed.Cir.), *cert. denied*, 525 U.S. 826, 119 S.Ct. 73, 142 L.Ed.2d 58 (1998). "[I]f the license is to be considered a virtual assignment to assert standing, it must be in writing." *Enzo Apa & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed.Cir.1998). If the party alleging patent infringement cannot establish title in the patent at issue, that party lacks standing to seek a remedy for infringement of the patent rights and the case must be dismissed. *See Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed.Cir.) (*en banc*), *cert. denied*, 516 U.S. 867, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995).

## III. ANALYSIS OF RIGHTS CONVEYED TO DURATHERM FROM HOGAN

### A. Principles of Contract Interpretation

■ "When a case involves the interpretation of a contract and the contract is found to be unambiguous, a summary judgment is proper." *Hallmark v. Port/Cooper–T. Smith Stevedoring Co.*, 907 S.W.2d 586, 590 (Tex.App.—Corpus Christi 1995, no writ). "As a general rule, the interpretation of a contract is a question of law, not fact." *Merritt–Campbell, Inc. v. RxP Products, Inc.*, 164 F.3d 957, 961 (5th Cir.1999). If a contract can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the Court will construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 392 (Tex.1983); *Corriveau v. 3005 Investment Corp.*, 697 S.W.2d 766, 767 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). Under Texas law, the Court must look to the parties' objective, not subjective, intent. *U.S. for Use and Benefit of Straus Systems, Inc. v. Associated Indemnity Co.*, 969 F.2d 83, 85 (5th Cir.

1992). In this case, the parties agree that the contract is not ambiguous.

## B. *Relevant Contract Provisions*

In February 2000, Hogan and Duratherm entered into a Technology License Agreement ("Agreement") which granted to Duratherm an

> exclusive license limited to (a) using the Non–Radioactive Technology in the Non–Radioactive Licensed Field, (b) sublicensing purchasers of apparatus embodying the Non–Radioactive Technology or the Non–Radioactive Patent Rights to use such apparatus in the treatment of waste materials other than radioactive waste, and (c) making and selling such apparatus to such sublicensees."

Agreement, Exh. A to Motion, at 3.[1] The Agreement also provided that Duratherm has the right to prosecute a suit "against an infringer of any patent included in the 'Non–Radioactive Patent Rights.'" *Id.* at 7. In the original Agreement, " 'Non–Radioactive Patent Rights' was defined to mean any patents or patent applications listed on Schedule A." *Id.* at 1.

The Agreement was subsequently clarified by the First Amendment to Technology License Agreement ("Amendment"). In the Amendment, Duratherm's right to sue for patent infringement was limited to "infringement of the Non–Radioactive Patent Rights." Amendment, Exh. B to Motion, at 2. The definition of "Non–Radioactive Patent Rights" contained in the Agreement was "deleted and replaced with" a new definition which was more limited and defined "Non–Radioactive Pat-

ent Rights" as patent and patent applications listed on Schedule A "in the Non–Radioactive Licensed Field." *Id.* at 1. The "Non–Radioactive Licensed Field" was defined in the Agreement to mean "the complete process ... in connection with the treatment of waste materials other than radioactive waste ... by means of a desorber ... or any other similar process incorporating the Non–Radioactive Technology ...." Agreement, at 2. This definition was not altered by the Amendment.

## C. *Interpretation and Conclusion*

■ Duratherm's right under the Amendment to sue for infringement is limited to infringement of the "Non–Radioactive Patent Rights." These "Non–Radioactive Patent Rights" are defined by the Amendment as patents and patent applications "listed on Schedule A in the Non–Radioactive Licensed Field." The "Non–Radioactive Licensed Field" is defined to include the complete "process," but does not include any apparatus.[2] Although the process contained in the definition of "Non–Radioactive Licensed Field" is further limited to a process which uses a desorber or the "Non–Radioactive Technology," the definition does not include the desorber itself or the "Non–Radioactive Technology" as part of the "Non–Radioactive Licensed Field."

The unambiguous contract provisions give Duratherm a right to sue as to the "complete process" described in any patents listed in Schedule A, which includes the patent-in-suit. *See* Amendment, at 1–2; Agreement, at 1. It is undisputed, however, that the '060 patent on which Durat-

---

1. Hogan granted a similar license to GTS Duratek, Inc. in connection with the treatment of radioactive waste.

2. Unlike the "Non–Radioactive Licensed Field," the "Non–Radioactive Licensed Sub-

ject Matter" is defined in the Agreement to include, *inter alia*, "any process, composition of matter, article of manufacture, apparatus, item, service or sublicense ...." *See* Agreement, at 2.

herm sues covers only an apparatus, not a process. *See* '060 Patent, Exh. 4 to Appendix to Duratherm's Opposition [Doc. # 28]. As a result, the contract provisions do not authorize Duratherm to sue for infringement of the '060 patent.[3]

### D. *Potential Amendment or Reformation*

The Court notes that Hogan and Duratherm could, if they so desired, amend their contract to grant to Duratherm an exclusive license in the '060 apparatus patent. The Court notes further, however, that Hogan and Duratherm cannot now amend or otherwise alter their contract to save this lawsuit. As the Federal Circuit has stated:

> As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignment in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day.

*Enzo APA,* 134 F.3d at 1093.

Having concluded that Duratherm does not have the right to sue for infringement

of the '060 patent and that the defect cannot be remedied at this point to save this lawsuit, the Court must dismiss this case.

## IV. *STATE LAW CLAIMS*

Under 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Duratherm's pendent state law claims. These matters are more properly dealt with in the state courts of Texas. *See Moore v. Willis Independent School Dist.,* 233 F.3d 871, 871 (5th Cir.2000); *Robertson v. Neuromedical Center,* 161 F.3d 292, 296 (5th Cir.1998), *cert. denied,* 526 U.S. 1098, 119 S.Ct. 1575, 143 L.Ed.2d 671 (1999) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."). Plaintiff should take note that the period of limitations for the dismissed state claims is tolled for an additional period of thirty (30) days after the entry of a Final Order dismissing those claims unless state law provides for a longer tolling period. 28 U.S.C. § 1367(d).

## V. *CONCLUSION AND ORDER*

Based on the foregoing, the Court concludes that Duratherm does not have rights in the patent-in-suit which give it standing to sue for patent infringement. As a result, Duratherm's patent infringement claim must be dismissed. It is hereby

**ORDERED** that Onsite's Motion to Dismiss [Doc. # 26] is **GRANTED** and Duratherm's patent infringement claim is dismissed. It is further

---

**3.** Duratherm argues that a "field of use" licensee can be an exclusive licensee with "co-plaintiff" standing with the patent holder. *See* Sur-reply, at 2. The "field of use" as to which Duratherm has a right to sue for patent infringement, however, is defined to include only the "process" which, while covered by one or more of the patents listed in Schedule A, is not covered by the '060 patent on which Duratherm attempts to base this lawsuit.

ORDERED that Duratherm's state law claims are **DISMISSED WITHOUT PREJUDICE**. It is further

ORDERED that Onsite and WCS shall advise the Court in writing on or before **February 9, 2001** whether they intend to pursue their counterclaims. If Onsite and WCS intend to pursue their counterclaims, they shall also include a written statement of the basis for this Court to entertain their counterclaims against Duratherm.