# United States Court of Appeals for the Federal Circuit

---

**VAPOR POINT LLC, KEITH NATHAN, KENNETH MATHESON,**
*Plaintiffs-Cross-Appellants*

**DON ALFORD, JEFFEREY ST. AMANT,**
*Counterclaim Defendants-Cross-Appellants*

**v.**

**ELLIOTT MOORHEAD, NANOVAPOR FUELS GROUP, INC., BRYANT HICKMAN,**
*Defendants-Appellants*

---

2015-1801, 2015-2003

---

Appeals from the United States District Court for the Southern District of Texas in No. 4:11-cv-04639, Judge Vanessa D. Gilmore.

---

Decided: August 10, 2016

---

JASON AARON WIETJES, Polsinelli PC, Dallas, TX, argued for plaintiffs-cross-appellants and counterclaim defendants-cross-appellants. Also represented by MICHAEL DAVID PEGUES.

WILLIAM PETERSON RAMEY III, Ramey & Schwaller, LLP, Houston, TX, argued for defendants-appellants.

---

Before O'MALLEY, CHEN, and STOLL, *Circuit Judges.*

Opinion for the court filed PER CURIAM.

Concurring opinion filed by *Circuit Judge* O'MALLEY.

PER CURIAM.

Vapor Point, L.L.C., Keith Nathan ("Nathan"), and Kenneth Matheson ("Matheson") (collectively "Vapor Point") sued Elliott Moorhead ("Moorhead"), NanoVapor Fuels Group, Inc., and Bryant Hickman ("Hickman") (collectively "NanoVapor") in the United States District Court for the Southern District of Texas, seeking to have Nathan and Matheson recognized as joint inventors under 35 U.S.C. § 256 on NanoVapor's U.S. Patent Nos. 7,727,310 ("the '310 patent") and 8,500,862 ("the '862 patent"). NanoVapor responded by suing Vapor Point, seeking to have Moorhead recognized as a joint inventor under 35 U.S.C. § 256 on Vapor Point's U.S. Patent Nos. 7,740,816; 7,803,337; 8,337,585; 8,337,604; 8,337,763 and for declaratory relief regarding inventorship of NanoVapor's '310 and '862 patents. After a four-day evidentiary hearing, the district court issued an order granting Vapor Point's motion for correction of inventorship and denying each of NanoVapor's motions. Vapor Point moved for exceptional case status and attorneys' fees. The district court issued a final judgment correcting inventorship, dismissing the action with prejudice, and denying Vapor Point's motion for exceptional case status and attorneys' fees.

NanoVapor appeals the district court's order on inventorship and its dismissal of the case. Vapor Point cross-appeals the same order to the extent it holds that the case is not exceptional and that an award of attorneys' fees is not warranted. We find that the district court did not err in dismissing the case after determining inventorship,

especially in light of NanoVapor's concession that a determination of inventorship would resolve the case. We further find that the district court did not abuse its discretion in denying Vapor Point's motion for exceptional case status and attorneys' fees. Therefore, we affirm.

BACKGROUND

The factual and procedural history in this case is confusing, but is important to the issues we resolve. We do our best to lay it out with clarity.

The patents-in-suit are generally directed "to the removal of volatile fuel vapors, also known as volatile organic compounds ('VOCs'), from storage tanks and other holding vessels, generally in the oil and gas industry." Inventorship Order at 3, *Vapor Point, L.L.C., et al. v. Moorhead, et al.*, No. 4:11-CV-04639 (S.D. Tex. Mar. 13, 2015), ECF No. 321 (hereinafter "*Inventorship Order*"). "EPA and state 'clean air' regulations regulate the percentage of contaminates that may be discharged" into the atmosphere. *Id.* at 4. The patents-in-suit "address this problem by capturing and recovering the fuel vapors." *Id.*

"NanoVapor is an industry leader in the field of [VOC] containment, including a process called Vapor Suppression System developed by Moorhead that aims to control or eliminate combustible and toxic gases in fuel storage and transfer operations." *Id.* at 7. After working with Moorhead to help market this technology, Nathan became Chief Operating Officer of NanoVapor in 2007. *Id.* at 8.[1]

---

[1] The parties agree that Moorhead and Nathan were acquainted before Nathan began work with NanoVapor, but disagree regarding the length of their interaction. NanoVapor alleged they met "at an industry conference in 2005" while Vapor Point alleged they "began working [together] . . . in the summer of 2006." *Id.* at 7.

NanoVapor later hired Matheson to help with the "commercial embodiment" of the technology being developed. *Id.* Moorhead filed provisional patent application 60/871/766 on December 22, 2006, claiming the vapor suppression system that is the subject of NanoVapor's '310 patent. The '310 patent claims priority to this application. The parties disagree over whether Nathan was aware at the time of the progress of the patent application. *Id.* at 8.

NanoVapor alleged that Nathan and Matheson "plotted to steal [NanoVapor's] technology and destroy [NanoVapor's] business when [Nathan and Matheson] developed the commercial embodiment of NanoVapor's patent-pending concept." *Id.* According to NanoVapor, "an outside group conducted due diligence testing that exceeded expectations," after which Nathan and Matheson "decided to steal the technology and associated trade secrets." *Id.* NanoVapor asserts that Nathan and Matheson "each requested a 20% stake in NanoVapor, which [NanoVapor] rejected." *Id.*

In contrast, Vapor Point alleges that "the '310 patent [NanoVapor] filed for on December 18, 2007 wrongfully incorporated, disclosed, and claimed all of Nathan and Matheson's conceptual and inventive contributions." *Id.* The '862 patent, according to Vapor Point, similarly misappropriated Nathan and Matheson's work. *Id.* Nathan and Matheson allege that they are the true inventors of the technology disclosed in the '310 patent "because Defendant Moorhead brought on Nathan and Matheson to help him reengineer the system and bring it to market but that Moorhead wrongfully filed for the '310 patent without consent, notice, or compensation to Nathan or Matheson." *Id.* at 9. Based on the allegations, Vapor Point asked that the district court correct inventorship of the '310 and '862 patents to add their names to both, or possibly even substitute their names for Moorhead's on both.

For its part, NanoVapor asked the district court to alter the inventorship of *Vapor Point's* five patents to include Moorhead "because the Vapor Point patents are based on Defendant Moorhead's conceptions in the '310 patent." *Id.*

In addition to its requests to correct the inventorship of NanoVapor's patents, Vapor Point also asserted a number of state law claims against NanoVapor: common-law fraud, fraud by nondisclosure, unjust enrichment, tortious interference, misappropriation of trade secrets, and the Texas Theft Liability Act. First Amended Complaint at ¶¶ 61–104 (Counts III–VIII), *Vapor Point* (S.D. Tex. Aug. 16, 2013), ECF No. 151. NanoVapor, in turn, asserted a number of affirmative defenses to the claims in Vapor Point's First Amended Complaint, including that "[Vapor Point] cannot prevail because [Vapor Point has] an obligation to assign any invention to NanoVapor Fuels Group, Inc." Original Answer to First Amended Complaint at ¶ 116, *Vapor Point* (S.D. Tex. Aug. 30, 2013), ECF No. 155; *see also id.* at ¶ 117 (specifying that an obligation to assign arises from an alleged employment of Nathan and Matheson by NanoVapor). In its counter-claim NanoVapor also asserted infringement of the '310 patent and eight state law claims: misappropriation of trade secrets, the Texas Theft Liability Act, fraud, breach of fiduciary duty, tortious interference with business relationships, tortious interference with prospective business relationships, breach of contract, and unjust enrichment. Fourth Amended Counterclaim at ¶¶ 83–138, *Vapor Point* (S.D. Tex. May 14, 2014), ECF No. 212.

On June 25, 2014, the district court issued an order denying NanoVapor's motion for an evidentiary hearing on inventorship. Order, *Vapor Point* (S.D. Tex. June 25, 2014), ECF No. 241. The district court reasoned that, "[b]y requesting findings of fact and conclusions of law relating only to inventorship under 35 U.S.C. § 256, both parties are essentially requesting that this Court bifur-

cate the inventorship claims from the state law and infringement claims and make an early determination on the inventorship issues." *Id.* at 1. Because "the state law causes of action share a common factual core with the inventorship claims and judicial determination of the inventorship issues at [that] time would deprive the parties of their right to a jury trial," the district court denied the parties' request for an evidentiary hearing. *Id.* at 2.

NanoVapor then filed a notice with the district court dismissing its state law claims "with prejudice to re-filing." Notice of Nonsuit of State Law Claims, *Vapor Point* (S.D. Tex. Aug. 1, 2014), ECF No. 254. In that notice, NanoVapor asserted that, "[i]n response to [NanoVapor] non-suiting their state law claims, [Vapor Point has] agreed to nonsuit" its state law claims. *Id.* at 2. "After [Vapor Point's] concurrent nonsuit of the state law claims only claims related to inventorship and infringement will remain before the Court." *Id.* In so doing, NanoVapor explicitly "request[ed] the Court to decide the inventorship issues as there is no right to a jury trial on contested fact issues related to inventorship." *Id.* Accordingly, the district court dismissed all of the state law claims pled by either Vapor Point or NanoVapor, with prejudice. *See* Order on Notice of Nonsuit of State Law Claims, *Vapor Point* (S.D. Tex. Aug. 11, 2014), ECF No. 261.

"[S]ection 256 . . . explicitly authorizes judicial resolution of co-inventorship contests over issued patents." *MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568, 1570 (Fed. Cir. 1989). Consistent with § 256, the district court held a four-day evidentiary hearing to determine inventorship of the patents-in-suit. After the hearing, the district court issued an order denying NanoVapor's claims of inventorship and granting Vapor Point's to the extent Nathan and Matheson sought to be added to the '310 and

'862 patents as additional inventors. *See Inventorship Order* at 27.

In that decision, the district court addressed the "four key concepts in the '310 and '862 patents": (1) using biodiesel as a vapor capture medium; (2) removing VOCs from a vessel containing fuel vapors and introducing them into a vapor capture medium (such as biodiesel); (3) using a particulatizer to create micro-sized VOC particles for treatment; and (4) using diffusion plates to distribute micro-sized particles across the vapor capture medium. *Id.* at 11. The district court found that Nathan contributed to the conception of the first three of these four key concepts and that Matheson contributed to the third and fourth concepts. *See id.* at 16–24. The district court denied NanoVapor's claim that Moorhead should be a named inventor on Vapor Point's patents. *See id.* at 24–26.

Following the district court's resolution of the inventorship issues, NanoVapor moved for a new trial "solely address[ing] the Court's closing of the case without allowing a trial on the affirmative defenses," including any obligation to assign. NanoVapor's Motion for a New Trial, *Vapor Point* (S.D. Tex. Apr. 3, 2015), ECF No. 330. In Vapor Point's response, it argued that NanoVapor's motion for a new trial on the affirmative defense of an obligation to assign was improper.

Vapor Point initially asserted a claim for correction of inventorship under § 256 along with its various state law tort claims. Because the latter were dismissed with prejudice, only the federal claim under § 256 remained. Since "an obligation to assign is not an affirmative defense to a cause of action to correct inventorship," and because only the inventorship claims remained, Vapor Point argued that the equitable affirmative defense of an obligation to assign also should be dismissed with prejudice. Vapor Point's Response to NanoVapor's Motion for

New Trial at 6, *Vapor Point* (S.D. Tex. Apr. 24, 2015),
ECF No. 335. Because NanoVapor did not join Nathan
and Matheson—now deemed to be two of the inventors of
the patents-in-suit—in the infringement claims against
Vapor Point, Vapor Point argued that NanoVapor "d[id]
not have standing to pursue [its] claim for infringement of
the '310 patent, eliminating any claim against Vapor
Point." *Id.* at 9; *see also* Appellant's Br. at 13 ("All patent
owners must join in a patent infringement suit.
NanoVapor did not join Nathan and Matheson in its
infringement claim. Therefore, NanoVapor did not have
standing to pursue a claim for infringement of the '310
patent.") (citing *Enovsys LLC v. Nextel Commc'ns., Inc.*,
614 F.3d 1333, 1341 (Fed. Cir. 2010) ("When a patent is
co-owned, a joint owner must join all other co-owners to
establish standing."); 35 U.S.C. § 281). The district court
agreed with Vapor Point and dismissed the case. Final
Judgment at 2, *Vapor Point* (S.D. Tex. Aug. 24, 2015),
ECF No. 377.

After the court's order on inventorship, Vapor Point
moved for a determination that the case was exceptional,
entitling it to attorneys' fees. *See Vapor Point* (S.D. Tex.
June 16, 2015), ECF No. 347; *Vapor Point* (S.D. Tex. June
16, 2015), ECF No. 349. The district court, without
discussion, denied these motions in its final order. Final
Judgment at 2, *Vapor Point* (S.D. Tex. Aug. 24, 2015),
ECF No. 377. We have jurisdiction pursuant to 28 U.S.C.
§ 1295(a)(1).

## DISCUSSION

NanoVapor now appeals, arguing, *inter alia*, that the
district court erred in its determination of inventorship
and erred when it dismissed the case without deciding
whether Nathan and Matheson had an obligation to
assign their inventorship interests to NanoVapor. Vapor
Point appeals the district court's denial of attorneys' fees

and its decision that the case is not exceptional. We address each argument in turn.

## A. Inventorship Order

"A person who alleges that he is a co-inventor of the invention claimed in an issued patent who was not listed as an inventor on the patent may bring a cause of action to correct inventorship in a district court under 35 U.S.C. § 256." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1357 n.1 (Fed. Cir. 2004). Inventorship is a question of law entitled to de novo review by this court. *Gen. Elec. Co. v. Wilkins*, 750 F.3d 1324, 1329 (Fed. Cir. 2014). "On appeal from a bench trial, we review a district court's decision for errors of law and clearly erroneous findings of fact." *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1301 (Fed. Cir. 2002); *see also Preston v. Marathon Oil Co.*, 684 F.3d 1276, 1287 (Fed. Cir. 2012). A factual finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

NanoVapor argues, *inter alia*, that the district court's determinations on inventorship were not supported by clear and convincing evidence. *See* Appellant's Br. at 23–30.

For the most part, we disagree. Given the evidence adduced, we find that the district court was correct to conclude that both Nathan and Matheson should be listed as inventors on the '310 patent, which is the only patent asserted in NanoVapor's infringement claim. All inventors, even those who contribute to only one claim or one aspect of one claim of a patent, must be listed on that patent. *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) ("[A] co-inventor need not make a contribution to every claim of a patent. A contribution to one claim is enough.") (citation omitted). The

district court's findings that Nathan contributed to three of the four key aspects of the invention are supported by substantial evidence. And, substantial evidence supports the district court's conclusion that Matheson contributed to the conception of the use of diffusion plates, as recited in claims 11 and 12 of the '310 patent. While we agree with NanoVapor that the district court erred in finding that Matheson contributed to the conception of the use of a particulatizer to create micro-sized VOC particles for treatment and the use of diffusion plates to distribute micro-sized particles across the vapor capture medium, that error does not change the validity of the ultimate judgment because Matheson was still properly found to be an inventor of the diffusion plates.[2]

These findings are sufficient to support the district court's inventorship judgment. Co-inventors need not "physically work together or at the same time," "make the same type or amount of contribution," or "make a contri-

---

[2]    Matheson admitted on cross-examination that the use of a particulatizer was conceived *before* Matheson joined the project, and no other evidence shows that Matheson was involved in or copied on exchanges between Moorhead and Nathan on that topic. While the district court noted that "emails sent from Nathan to Moorhead between January and March of 2007, include the concept of introducing VOCs to the vapor capture medium as micro-sized particles" and that "Nathan's email messages to Moorhead including text like 'Another photo to keep your spirits high!!' and 'pics from lab this AM' support [Vapor Point's] theory that Nathan *and Matheson* conceived of the need for micro-particles of VOCs," *Inventorship Order* at 21–22 (emphasis added), the emails do not show that Matheson was copied on these exchanges, or was ever aware of them.

bution to the subject matter of every claim of the patent." 35 U.S.C. § 116. "[I]nventorship is determined on a claim-by-claim basis." *Trovan*, 299 F.3d at 1302 (citing *Ethicon*, 135 F.3d at 1460).

Because we find that the district court's conclusions are supported by substantial evidence for both Nathan and Matheson—for at least one of the claim elements—we affirm the district court's inventorship determinations with respect to the '310 patent.

## B. Obligation to Assign

NanoVapor next claims that the district court erred when it dismissed the action without first determining whether Nathan and Matheson had an obligation to assign their invention to NanoVapor. The district court found that it need not resolve whether there was an obligation to assign the patents because "[a]ll parties understood that the evidentiary hearing would resolve the issue of inventorship and would be dispositive of the remaining infringement claim in the case." Final Judgment at 2, *Vapor Point* (S.D. Tex. Aug. 24, 2015), ECF No. 377. In other words, the district court found that NanoVapor had waived its right to ask the court to decide the assignment question. We agree.

While NanoVapor did assert that Nathan and Matheson had an obligation to assign their rights to the invention, it did so only as an equitable affirmative defense to Vapor Point's state law claims. *See* Original Answer to First Amended Complaint at ¶¶ 116–17, *Vapor Point* (S.D. Tex. Aug. 30, 2013), ECF No. 155. As discussed above, these state law claims were dismissed with prejudice. Order on Notice of Nonsuit of State Law Claims, *Vapor Point* (S.D. Tex. Aug. 11, 2014), ECF No. 261. The only remaining claims from Vapor Point's complaint were those seeking a correction of inventorship. And, "[i]t is elementary that inventorship and ownership are separate issues." *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d

1237, 1248 (Fed. Cir. 1993); *see also Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1465 (Fed. Cir. 1998) ("Questions of patent ownership are distinct from questions of inventorship."). "[I]nventorship is a question of who actually invented the subject matter claimed in a patent. Ownership, however, is a question of who owns legal title to the subject matter claimed in a patent, patents having the attributes of personal property." *Id.* The parties agree that ownership is not an affirmative defense to an inventorship claim under § 256. *See, e.g.*, Appellant's Response and Reply Br. at 3 ("ownership is not an affirmative defense to inventorship"); Oral Arg. at 26:19–27:10, *available at* http:// oralarguments.cafc.uscourts.gov/default.aspx?fl=2015-1801.mp3 (counsel for Vapor Point arguing that ownership is not a defense to inventorship). The voluntary dismissal of the state law claims mooted NanoVapor's affirmative defense that Nathan and Matheson had an obligation to assign any rights in the '310 patent to NanoVapor.

NanoVapor went further by affirmatively representing to the district court that resolution of the inventorship issue would dispose of the infringement issue. On August 29, 2014, the district court asked NanoVapor's counsel whether the trial to determine inventorship would "basically be the entire trial on the merits." J.A. 1480. Counsel for NanoVapor responded: inventorship "is ultimately most likely dispositive of the other issue, now just infringement, and ultimate willfulness at that point if it's decided against NanoVapor." J.A. 1480–81; *see also* J.A. 392 (August 6, 2014 letter from NanoVapor's counsel seeking a status conference and representing that "the only two issues remaining are inventorship and infringement."). Inventorship is dispositive of infringement if and only if NanoVapor waives its ownership by assignment claim. Ultimately, the district court decided the inventorship issue against NanoVapor when it determined that

Nathan and Matheson were co-inventors. NanoVapor's clear representation that such a determination would be "ultimately most likely dispositive" of the inventorship issue is a waiver of any assertion of ownership of Nathan and Matheson's rights.

The district court did not err, therefore, in dismissing the infringement claim with prejudice because "[a]ll parties understood that the evidentiary hearing would resolve the issue of inventorship and would be dispositive of the remaining infringement claim in the case." Final Judgment at 2, Vapor Point (S.D. Tex. Aug. 24, 2015), ECF No. 377.

EXCEPTIONAL CASE AND ATTORNEYS' FEES

Vapor Point cross-appeals the district court's determination that it is not entitled to attorneys' fees and the case is not exceptional. While we would have preferred a written explanation for its decision, upon review of the record, we do not find that the denial of Vapor Point's motion was an abuse of the district court's discretion.

CONCLUSION

The district court's ultimate determination on inventorship is supported by substantial evidence. NanoVapor cannot now assert equitable defenses to claims that were voluntarily dismissed. Moreover, NanoVapor waived its right to pursue ownership under an obligation to assign theory by explicitly representing that resolution of the inventorship issue would resolve the infringement issue. For the reasons discussed above, and because we find each of NanoVapor's additional arguments unpersuasive, we affirm.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

**VAPOR POINT LLC, KEITH NATHAN, KENNETH MATHESON,**
*Plaintiffs-Cross-Appellants*

**DON ALFORD, JEFFEREY ST. AMANT,**
*Counterclaim Defendants-Cross-Appellants*

**v.**

**ELLIOTT MOORHEAD, NANOVAPOR FUELS GROUP, INC., BRYANT HICKMAN,**
*Defendants-Appellants*

---

2015-1801, 2015-2003

---

Appeals from the United States District Court for the Southern District of Texas in No. 4:11-cv-04639, Judge Vanessa D. Gilmore.

---

O'MALLEY, *Circuit Judge*, concurring.

I agree that the district court's conclusions on inventorship are, as detailed in the majority opinion, supported by substantial evidence. I also agree that, by the stipulated dismissal of all state law claims and through its representations to the district court, NanoVapor's counsel waived its right to an additional hearing on whether it has the right to assert ownership over the patent interests of Nathan and Matheson. I write separately, however, because I believe that, even if we did not find waiver, 35

U.S.C. § 261 requires NanoVapor to demonstrate that any assignment of patent rights was executed in writing, which it undeniably cannot do. NanoVapor's admission that no writing exists should render unnecessary its request for an evidentiary hearing to determine if Nathan and Matheson had an obligation to assign their interests in the '310 patent to NanoVapor. Without an assignment in writing, Nathan and Matheson could not give NanoVapor legal title to the patents sufficient to maintain standing in a patent infringement suit for money damages. To the extent *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403 (Fed. Cir. 1996) and its progeny are to the contrary, this court should consider overruling that precedent when presented with the question in a case where the issue is determinative of the outcome.

## DISCUSSION

35 U.S.C. § 261 provides that "[a]pplications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing." This is an explicit statutory requirement that "all assignments of patent interest be in writing." *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1379 (Fed. Cir. 2009). The "in-writing" requirement for patent assignment goes back at least as far as the Patent Act of 1836, noting that "assignment[s] . . . shall be recorded in the Patent Office within three months from the execution thereof." Patent Act of 1836, ch. 357, § 11, 5 Stat. 117 (where recordation requires a writing); *see also* Patent Act of 1870, ch. 230, § 36, 16 Stat. 198 (codified as amended in 1874 as R.S. § 4898) ("[E]very patent or any interest therein shall be assignable in law, by an instrument in writing . . . ."); *Blakeney v. Goode*, 30 Ohio St. 350, 355 (1876) ("[S]uch contracts must be in writing as affect the title to the patent; other contracts, which affect equitable interests, may be by parol.").

In assessing whether an attempted assignment is sufficient to transfer title or ownership, courts must look to whether the parties can satisfy this "in-writing" requirement. *Abbott Point of Care Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012) ("Transfers of title, otherwise known as assignments, are controlled by 35 U.S.C. § 261 . . . ."). Without a written assignment that satisfies § 261, a party who is not the inventor simply lacks standing to bring a patent infringement suit for money damages. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000) (holding that a "written instrument" was needed to document the "transfer of proprietary rights" to support standing to sue for patent infringement) (citing 35 U.S.C. § 261). Our case law, in most cases, reflects this apparently inviolable rule.

We have written, for example, that, although a license may be written, verbal, or implied, if a license is to confer standing it must be written so as to "resemble an assignment in both form and substance" to prevent parties from "engag[ing] in revisionist history, circumventing the certainty provided by the writing requirement of section 261 by claiming to be patentee by virtue of a verbal licensing arrangement." *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998). And while this court has acknowledged that patent ownership may be transferred by "operation of law" rather than through a written assignment—such as by way of inheritance, *see Sky Techs.*, 576 F.3d at 1379—§ 261 applies where an employer claims an employee had an *obligation to assign* his or her rights in an invention to the employer.

In *Teets*, however, a panel of this court held that the "in-writing" requirement of § 261 can be ignored. In that case, the district court found that Teets solely owned the invention-at-issue and granted him an injunction against his employer Chromalloy, who appealed. A panel of this court resolved the conflict between the litigants on two separate theories: the shop right doctrine and an implied-

in-fact contract. *See* 83 F.3d at 407, 408–09. This court first found that Chromalloy had a shop right, which "permits the employer to use the employee's invention without liability for infringement." *Teets*, 83 F.3d at 407. This would have been sufficient to end the inquiry on appeal—Teets could not obtain an injunction against his employer if the employer has a valid shop right, an equitable claim to use the invention. The panel further resolved the matter, however, by holding (1) that "an employee may . . . freely consent by contract to assign all rights in inventive ideas to the employer"—which is certainly a correct statement of law—and (2) even "without such an express assignment," an employer may prove the "existence of an implied-in-fact contract to assign inventive rights" under state law principles. This is where the *Teets* decision becomes irreconcilable with § 261. *Id.* at 407–08. Even with "no express agreement of any kind with Teets," the panel not only vacated the injunction against Chromalloy, but also reversed the district court's determination that Teets owned all rights in the patent-in-suit. It did so, moreover, without so much as a nod to the language of § 261. *Id.* at 409.

But § 261 cannot be ignored or rendered inapplicable by contrary state law contract principles. Section 261 is a federal statute that must prevail even where state law would otherwise allow a court to find and enforce a non-written agreement between the parties. *See Sky Techs.*, 576 F.3d at 1379 ("Usually, federal law is used to determine the validity and terms of an assignment, but state law controls any transfer of patent ownership by operation of law not deemed an assignment."); *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008) ("Although state law governs the interpretation of contracts generally, the question of whether a patent assignment clause creates an automatic assignment or merely an obligation to assign is intimately bound up with the question of standing in patent cases.

We have accordingly treated it as a matter of federal law.") (citation omitted); *Enzo*, 134 F.3d at 1093 (Fed. Cir. 1998) (holding that a plaintiff lacked standing to file suit because the purported license is not in writing, as required by federal law); *see also In re CFLC, Inc.*, 89 F.3d 673, 679 (9th Cir. 1996) ("[F]ederal law governs the assignability of patent licenses because of the conflict between federal patent policy and state laws, such as California's, that would allow assignability."); *PPG Indus., Inc. v. Guardian Indus. Corp.*, 597 F.2d 1090, 1093 (6th Cir. 1979) ("Questions with respect to the assignability of a patent license are controlled by federal law."); *Unarco Indus., Inc. v. Kelley Co.*, 465 F.2d 1303, 1306 (7th Cir. 1972) ("We are of the opinion that the question of assignability of a patent license is a specific policy of federal patent law dealing with federal patent law. Therefore, we hold federal law applies to the question of the assignability of the patent license in question."). A federal statute on the law of assignments simply trumps contrary state law.

While it is true that state law principles give rise to the equitable shop rights *Teets* addressed in the first portion of its judgment, state law cannot create standing where federal law prohibits it. *Teets*' holding to the contrary is wrong.

In this case, NanoVapor conceded to the district court that it lacked an executed written instrument and conceded again at oral argument before this court that the non-executed document on which it relies is neither a writing under § 261 nor contains an assignment clause. At the inventorship hearing, the district judge asked counsel for NanoVapor whether Nathan and Matheson were employees of NanoVapor and, in particular, whether they had written employment agreements. The following exchange took place:

THE COURT: You guys had written employment agreements?

MR. RAMEY: Yes, your Honor. ***They weren't actually signed*** by Mr. Matheson or Mr.—well, Mr. Nathan signed a prospective hire agreement but Mr. Matheson didn't even sign that. At that point, it was just the NDAs that had been signed. But they had—and the parties—the big point here is the parties were operating under them.

J.A. 731 (emphasis added). During Nathan's redirect examination, Nathan confirmed that he never signed an employment agreement:

Q Were you ever proffered an employment agreement from NanoVapor?

A I was given employment agreements. ***I never signed any of them***.

Q Do you recall how many employment agreements you were given?

A Three, maybe four.

J.A. 988 (emphasis added). In its Motion for a New Trial, NanoVapor stated that, while it was undisputed "that Nathan and Matheson intended to sign [the employment] agreements when NanoVapor was funded," "as NanoVapor was unable to secure funding by December 18, 2007, Nathan and Matheson did not sign the employment agreements and left NanoVapor." NanoVapor's Motion for a New Trial at 4, *Vapor Point* (S.D. Tex. Apr. 3, 2015), ECF No. 330. And at oral argument in front of this court, counsel for NanoVapor again confirmed the absence of any written instrument assigning Nathan and Matheson's ownership rights to NanoVapor. Oral Arg. at 01:56–02:15.

During oral argument, NanoVapor contended that, even without a signed employment agreement, this court

should nevertheless remand for additional proceedings on ownership and infringement because "the courts can recognize that the person that was hired was operating pursuant to an employment agreement [under] Fifth Circuit law . . . that they were performing according to the terms of that employment agreement and that employment agreement maintained that they had an obligation to assign." *Id.* at 04:24–04:51. But NanoVapor immediately conceded that, whether executed or not, the employment agreement at issue had no obligation-to-assign clause. *Id.* at 05:03–05:24. NanoVapor's interpretation of the law of assignment would, moreover, undermine § 261 by conflating the requirements for an assignment sufficient to establish legal title that gives rise to standing to assert an infringement claim with those that merely give rise to equitable title under the hired-to-invent and shop right doctrines.

The Supreme Court has explained that the hired-to-invent assignment is an equitable one:

> If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto *as against his employer*. That which he has been employed and paid to accomplish becomes, when accomplished, the property of his employer.

*Solomons v. United States*, 137 U.S. 342, 346 (1890) (emphasis added); *see also Standard Parts Co. v. Peck*, 264 U.S. 52, 59–60 (1924) (holding that an independent contractor engaged to "devote his time to the development of a process and machinery" to solve a particular problem for compensation had no legal right to a patent on the inventions he develops in that employment absent a contract to the contrary). Under the so-called hired-to-invent doctrine, therefore, an employer may have an

equitable right to practice the claims of the patent by virtue of the employment relationship. That equitable right protects an employer from a claim of patent infringement by its employee, but does not operate to transfer legal title in the patent.

The shop right doctrine is similar. When an employee invents under the auspices of an employer, the employer will, at a minimum, have an implied right to use that invention.

> [W]hen one is in the employ of another in a certain line of work, and devises an improved method or instrument for doing that work, and uses the property of his employer and the services of other employes to develop and put in practicable form his invention, and explicitly assents to the use by his employer of such invention, a jury, or a court, trying the facts, is warranted in finding that he has so far recognized the obligations of service flowing from his employment and the benefits resulting from his use of the property, and the assistance of the co-employes, of his employer, as to have given to such employer an irrevocable license to use such invention.

*Solomons*, 137 U.S. at 346. In this way, the concept of an equitable defense to an infringement claim merges with the shop right doctrine, which itself arises from the fact that the work done was for hire. This court has recognized shop rights as providing an employer a right to use its employee's invention without subjecting itself to liability for infringement. In *Teets* itself, for example, this court noted:

> Consistent with the presumption that the inventor owns his invention, an individual owns the patent rights even though the invention was conceived and/or reduced to practice during the course of employment. At the same time, howev-

er, the law recognizes that employers may have an interest in the creative products of their employees. For example, an employer may obtain a shop right in employee inventions where it has contributed to the development of the invention. A shop right permits the employer to use the employee's invention without liability for infringement.

*Teets*, 83 F.3d at 407 (citations omitted).

In *Gellman v. Telular Corp.*, 2011 WL 5966666 (Fed. Cir. 2011) (nonprecedential), moreover, this court clarified the equitable nature of the shop right and hired-to-invent doctrines. This court affirmed the dismissal of an infringement action brought by Ms. Gellman, the widow of one of the named inventors on the patent-in-suit. This was because Ms. Gellman failed to prove that the other co-inventor, an alleged employee of her late husband who had not joined the suit, had assigned his rights in the patent to her. The court wisely noted:

> [E]quitable claims [of patent ownership] do not themselves confer standing. . . . Courts have in some cases held that the inventions of an employee hired to make that invention fairly belong to the employer. But this doctrine is expressly equitable, and creates only an obligation for the employee to assign to his employer. It cannot save Ms. Gellman's case. . . . For the foregoing reasons, the district court did not err in dismissing without prejudice Ms. Gellman's case for lack of standing."

*Id.* at *3 (citations omitted). But equitable title is not sufficient to confer standing to pursue money damages in a patent infringement suit. "The general rule is that one seeking to recover money damages for infringement of a United States patent (an action 'at law') must have held the legal title to the patent during the time of the infringement." *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d

1574, 1579 (Fed. Cir. 1991) (citing *Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 40–41 (1923)).

In this case, if Nathan and Matheson asserted a claim of infringement against NanoVapor—they did not—NanoVapor could have asserted equitable defenses under these doctrines. *See Banks v. Unisys Corp.*, 228 F.3d 1357 (Fed. Cir. 2000) (applying hired-to-invent doctrine as an equitable defense); *Teets*, 83 F.3d 403 (applying shop right doctrine as an equitable defense). But where, as here, the question of affirmative standing to sue in the absence of named inventors is at issue, compliance with § 261 is mandatory. Any judicially crafted exception must bend under the unconditional language of § 261. NanoVapor's argument that Nathan and Matheson had an obligation to assign their rights to the '310 patent, therefore, first requires the production of a written instrument reflecting such an assignment. Only then could NanoVapor pursue its infringement claims.

CONCLUSION

Accordingly, as NanoVapor concedes it cannot adduce an executed assignment consistent with the requirements of § 261, and never sought a court order requiring a written assignment before asserting its infringement claims, those claims must be dismissed. Nathan and Matheson—along with Moorhead—currently hold legal title to the '310 patent and held legal title at the time suit commenced. As co-inventors on the '310 patent, Nathan and Matheson are entitled to practice the invention without fear of suit from the other inventors, and vice versa. Dismissal of the infringement claims against Vapor Point was, thus, appropriate for this reason as well as those explained in our majority opinion. To the extent *Teets* indicates that it is appropriate for a court to identify an implied-in-fact contract as a basis for an assignment of patent ownership rights that gives rise to standing to seek money damages for patent infringement in the absence of

a writing, we should undo that impermissible exception to the otherwise unconditional language of § 261 as soon as the appropriate opportunity arises.